100 So.2d 772

**Dean HOLLINGSWORTH**

v.

**W. N. CASE, d/b/a Case Auto Sales.**

7 Div. 326.

Supreme Court of Alabama.

Dec. 19, 1957.

Rehearing Denied March 6, 1958.

Miller & Hinton, Gadsden, for appellant.

Roberts & Orme, Gadsden, for appellee.

MERRILL, Justice.

The appellee, Case, brought detinue against appellant, Hollingsworth, to recover an automobile. The facts are more fully set out in the dissenting opinion of the Chief Justice. They may be outlined as follows: Case sold the automobile through an auction company to Bishop. The auction company had a policy with Fidelity Insurance Company of Tennessee whereby payment of Bishop's check was guaranteed. Bishop sold the automobile to Wyatt who sold it to appellant.

In the meantime, Bishop's check was not good and Case was reimbursed under the insurance policy. At that time, he signed the agreement quoted in Chief Justice LIVINGSTON'S opinion. He then brought this detinue suit against Hollingsworth. At the conclusion of the evidence, the court gave the affirmative charge with hypothesis for the plaintiff Case.

■ It is elementary that a plaintiff in detinue must have a general or special property in the article sued for, or have legal title, and the right of immediate possession at the time of the suit. La Rue v. Loveman, Joseph & Loeb, 220 Ala. 2, 127 So. 241; Hollimon v. McGregor, 225 Ala. 517, 143 So. 902; 7A Ala.Dig., Detinue, ☞ 5.

■ During the cross-examination of plaintiff Case, the following transpired:

"Q. All right now, after it (the amount of the check) was paid to you by the insurance company, have you had any further interest or title to this automobile? A. No sir.

"Q. And you don't have any interest or title in it now, do you? A. No sir.

"Q. And you didn't have any interest or title in it at the time you brought this suit, on the 13th day of March, 1956 did you? A. No sir.

"Q. And you haven't had any interest in it since that date, have you? A. No sir.

"Q. And you haven't seen it since the day you sold it? A. No sir.

"Q. Now you accepted this check in full payment of the automobile, did you not? A. Yes sir."

Nowhere in the record do we find a denial or a retraction of these categorical statements. The mere fact that Case testified on redirect examination that the suit was brought with his permission and that he was cooperating in it was not a suffi-cient modification of his quoted testimony to support the requested affirmative charge in his favor.

■ A conflicting tendency of the evidence making a question for the jury may be presented by the direct and cross-examination of one witness. Parkinson v. Hudson, 265 Ala. 4, 88 So.2d 793, and cases therein cited.

In view of the plaintiff's testimony quoted, supra, we cannot say that he was entitled to recover as a matter of law. It follows that the trial court erred in giving the affirmative charge with hypothesis requested by the plaintiff. The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

LAWSON, GOODWYN and COLEMAN, JJ., concur with the foregoing.

LIVINGSTON, C. J., dissents, in which SIMPSON, J., concurs specially.

LIVINGSTON, Chief Justice (dissenting).

On submission of the cause in this court, the record was assigned to the writer for decision. I prepared the following opinion, but some of my brothers were unable to agree. As a consequence, the majority opinion written by Mr. Justice MERRILL became the opinion of the court. I feel impelled to record my opinion as a dissent, in which Mr. Justice SIMPSON concurs specially, as noted below.

The appellee Case brought suit against appellant Hollingsworth to recover an automobile. The course of events giving rise to the litigation is as follows:

W. N. Case was the owner and operator of an automobile business in Rome, Georgia, and did business under the name of Case Auto Sales. On or about November 22, 1955, he carried the Ford auto-

mobile owned by him and the subject of this suit to Dixie Motors Auto Auction in Atlanta, Georgia, for the purpose of selling it. The automobile was offered by the auctioneer and was bid in by Gordon Bishop Motors. The purchaser tendered a check payable to Case Auto Sales in the amount of $1,635, which was received by the auctioneer who stamped upon the check this statement:

> "Dixie Auto Auction
> Insured under Policy No. 1034
> By Fidelity Insurance of Tenn.
> Atlanta, Ga."

Thereupon, both the seller, Case Auto Sales, and the buyer, Gordon Bishop Motors, signed an instrument denominated "Warranty of Title and Bill of Sale," showing that the automobile was sold at the price of $1,635, containing appropriate words of warranty and an agreement by the buyer that the title and ownership of the car remain in the seller until the check or draft given for the sale price be paid in full. The automobile was delivered to the purchaser, and thereafter the check was deposited by the seller in his bank. On December 6, 1955, the check was returned to the purchaser with the notice that the bank upon which it was drawn had dishonored it because of insufficient funds of the drawer. On the following day, the Fidelity Insurance Company of Tennessee paid to appellee Case the amount of the check drawn by Gordon Bishop Motors, and appellee thereupon gave to the Insurance Company a paper styled "Release and Subrogation Agreement," acknowledging receipt of stated sum, and containing the following:

> "In consideration of the payment by Fidelity of the above sum, the undersigned represents to Fidelity that no part of the funds evidenced by said instrument have been received by the undersigned, from the maker or drawer of the same or any other party or person, that said instrument was given to the undersigned for a valuable con-sideration, hereinafter set forth, and that said instrument was not honored or paid because of any fault or misrepresentation on the part of the undersigned.

> "The undersigned hereby transfers and assigns to Fidelity all its right, title and interest in and to the funds or moneys evidenced by the hereinafter described instrument, and authorizes and empowers Fidelity to take such action as, in its sole discretion, shall be meet and proper so as to collect from any person liable on said instrument or to recover the possession of the property for which said instrument was given to the undersigned as consideration. And to more effectively carry out this provision of this release and subrogation agreement, the undersigned covenants with Fidelity that it will cooperate fully with Fidelity in any action instituted by Fidelity to effect such recovery, will present any supporting documents that in the opinion of Fidelity, might be necessary, will execute any Court processes that might be required, will attend Court either as a party or as a witness and will likewise, to the best of its ability, secure the attendance of its employees provided; however, such Court proceedings or other actions as Fidelity might take looking to a recovery on said instrument shall be at the expense of Fidelity. The undersigned understands and agrees that any legal proceedings instituted under the terms of this Release and Subrogation Agreement shall be under the exclusive direction and control of Fidelity."

In the meantime, the purchaser Bishop sold the car in suit to Wyatt Motor Company, a used car dealer in Gadsden, under date of November 26, 1955, and Wyatt in turn sold the car at retail to defendant Hollingsworth, some 30 to 45 days afterward.

This suit was thereafter instituted against Hollingsworth, who gave bond and retained

the property. As originally filed, the complaint was captioned "W. N. Case, d/b/a Case Auto Sales, Plaintiff." Defendant's demurrer, that "d/b/a" has no legal meaning and therefore renders the name of the plaintiff indefinite, uncertain and unintelligible, was sustained and the complaint was amended by adding to the caption "W. N. Case, Individually and doing business as Case Auto Sales, Plaintiff." Defendant's demurrer to the amended complaint was that the amendment did not cure the previous defect, but did no more than add a new party plaintiff. This demurrer was overruled.

The trial court gave at plaintiff's request in writing the general affirmative charge with hypothesis, and denied a like charge requested by defendant. There was verdict for plaintiff for the property sued for or its alternate value of $1,350, and judgment accordingly.

It is first insisted that the court erred in overruling the demurrer to the amended complaint. This assignment, we think, is without merit. The effect of the amendment was merely to join Case as suing in his individual capacity and to spell out or make certain the meaning of the abbreviation "d/b/a," and did not work a change of parties plaintiff. There was no error in allowing this amendment. Code 1940, Tit. 7, § 239; Western Ry. of Alabama v. Sistrunk, 85 Ala. 352, 5 So. 79; Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 So. 871.

Except in one particular, which we will later consider, the assignments of error are predicated on the giving of the affirmative charge for plaintiff. The burden of the argument in brief is that plaintiff showed no right of recovery. It is argued, first, that plaintiff having accepted Bishop's credit, gave to Bishop a title warranty and bill of sale, which he did not record in the county to which the automobile was taken, and gave no notice to anyone of any defect in the title (the condition that title would not pass if the check was not paid). It is contended that by his conduct, plaintiff was precluded from denying Bishop's right to sell the automobile. This situation is so clearly identical with that involved in our case of Slaton v. Lamb, 260 Ala. 494, 71 So. 289, that we deem it necessary only to cite that case as a complete answer to appellant's argument on these propositions. We there held that a written agreement whereby title to an automobile was to remain in the seller until the check given in payment was paid constituted a cash transaction, and where the check was worthless no title to the automobile passed to the buyer or his subsequent vendees. It was further held that the recording statute, Code 1940, Tit. 47, § 131, had no application since there was no completed sale. We held that there was no field of operation for the principle that where one of two innocent persons must suffer, that person should suffer who brought about the situation. Here, as in Slaton v. Lamb, supra, there was no question of the seller turning over the automobile to the buyer for the purpose of a sale by the buyer, the sole question being whether there was in fact a sale. We reaffirm the holding in the Slaton v. Lamb case, supra.

In the second place, it is contended that Case could not maintain this action of detinue for the reason that at the time suit was commenced he did not have a general or special property in the chattel with right of immediate possession. That is the general, well-recognized rule, and if sustained would be decisive here. Commercial Investment Trust v. East, 217 Ala. 626, 117 So. 160, and cases collected in 7A Ala.Dig., Detinue, ⟸5. The argument is grounded upon the provisions of the release and subrogation agreement quoted above, the contention being that this instrument was in effect a transfer and assignment by Case to Fidelity of all his right, title and interest in and to the check and the automobile. True, as stated by appellant, "Ordinarily, assignee acquires same rights as those possessed by assignor which assignor has conveyed by assignment to assignee who steps into shoes of assignor." Upchurch v. West, 234 Ala. 604, 176 So. 186. But there

is a corollary to this rule that whether a transaction evidenced by written agreement is an assignment depends upon the intention of the parties as manifested in the writing and construed in the light of existing circumstances. Andalusia Motor Co. v. Mullins, 28 Ala.App. 201, 183 So. 456.

In approaching a construction of the agreement between Case and Fidelity, it must be borne in mind that there is no controversy between the parties to that instrument. The sole purpose of a construction of the instrument is to determine whether or not the effect of the instrument was such as to divest Case of his general or special property in the chattel with right of immediate possession, the condition precedent to his right to maintain the action in detinue. In making that determination, we are not remitted alone to the wording, or some of the wording, of the instrument. It is well recognized that "Contracts, not offensive to law or public policy, must have effect according to the intention of the parties. In ascertaining the intention, we must have regard to the relation of the parties at the time of the contract, its subject matter and the law, which it is justly inferable they had in view in contracting." Bryant v. Stephens, 58 Ala. 636. It is also recognized in the law of detinue that plaintiff in detinue is not required to have the absolute property in the thing sued for, a special qualified property being sufficient. Stoker v. Yerby, 11 Ala. 322; Sims v. Boynton, 32 Ala. 353. Such a special or qualified property necessarily comprehends a situation where the legal title, or indicia of title, lies in one and the beneficial right in another. Barrow v. Brent, 202 Ala. 650, 81 So. 669. This, for the reason that an equitable title will not support detinue. Gluck v. Cox, 75 Ala. 310.

Going to the evidence, it is shown that Case admitted that, having been indemnified by Fidelity, he had no further interest in the property, but it is also shown that the suit was instituted in his name by his permission, and as a matter of "cooperation" with Fidelity. He testified that he did not understand in executing the agreement that it was an assignment, but a subrogation and a covenant to cooperate. There is a very strong inference that one of the attorneys, if not the other, appearing for plaintiff on the trial, was in fact appearing in the interest of Fidelity. It appears that he was the one who delivered Fidelity's check to Case and accepted from him the Release and Subrogation Agreement. It was this attorney who, on examination of plaintiff as a witness, brought into evidence that agreement. It seems to us inescapable that the parties themselves, Case and Fidelity, treated the instrument as a covenant to cooperate rather than an assignment. The very presence of that instrument in the case, introduced, as we have shown, by the plaintiff, strengthens that conclusion. There is apt analogy to be found in the case of Rotten v. Collier & Co., 105 Ala. 581, 16 So. 921, 922. In that case, the plaintiffs relied upon a mortgage in a suit in detinue. Defendant relied upon an assignment of that mortgage to a third party as showing plaintiffs' lack of property in the chattel to maintain the suit. The court, through Justice McClellan, had this to say:

> "The mortgage under which the plaintiffs, Collier & Co., claimed the property sued for, was in their possession at the time of suit brought. The fact that it had previously been transferred by them to a third person as collateral security for a loan of money is of no consequence. Being in their hands at the commencement of the action, the natural presumption which the law indulges, in the absence of a showing to the contrary, is that the purposes of its conditional assignment have been met, and that, therefore, the instrument has been re-transferred by the delivery merely or otherwise to the mortgagee; and nothing appears here to the contrary."

We have a situation then where the parties not only placed their own interpretation upon the instrument, as not being an assignment, but where the plaintiff was

armed with the possession of the only indicia of property right or title that the "assignee" had in the chattel. There is no question that Case had the legal title to and prior possession of the automobile at the time of the abortive sale to Bishop. This with the fact that the only evidence of any outstanding title in another was in his (Case's) possession at the commencement of the suit, we conclude that appellant's contention that he did not have the right to maintain the detinue action is without merit. That is to say, appellant has failed to show an outstanding title in a third person which would defeat appellee's right to maintain the suit.

Finally, appellant argues for error in permitting the plaintiff to testify as to the alternate value of the automobile, proceeding upon the idea that the value to be determined was the value of the automobile in Gadsden, the place where the car was taken by Bishop and where it later came into the hands of the defendant, and that Case, a resident and dealer of Rome, Georgia, was not qualified to testify as to values in Gadsden. We pretermit as unnecessary a decision upon the validity of defendant's objection, but call attention to the case of Baldwin v. Troy Finance Corp., 245 Ala. 384, 17 So.2d 417, headnote 3. Here, the witness was shown to have had some ten years in the business of buying and selling automobiles, and testified that, while he had had no experience in the city of Gadsden, he was acquainted with the market in his home city of Rome, Georgia, 55 miles distant from Gadsden and with the market in the area embracing the two cities. We think he was qualified. We observe that no direct evidence of value was offered by defendant, and that no argument is made that the value fixed by the verdict was improper.

I have treated and passed upon all of the questions argued, and in my judgment, there is no error in the record and I, therefore, respectfully dissent from the opinion reversing and remanding the cause to the trial court.

SIMPSON, Justice (concurring specially with the dissent of LIVINGSTON, C. J.).

The rule, that in order to maintain detinue for the recovery of chattels, the plaintiff must at the commencement of the action have a general or special property in the chattels and must be entitled to immediate possession, does not obtain where the suit is against a mere wrongdoer. In such latter case, prior actual possession alone will authorize a recovery against such wrongdoer not showing any right of property in himself. Barksdale v. Strickland & Hazard, 220 Ala. 86, 124 So. 234; Jones v. Anderson, 76 Ala. 427.

In the instant case, as pointed out in the dissenting opinion of the Chief Justice, the defendant showed no right of property in himself and stands in the shoes of a mere wrongdoer with reference to the automobile. Slaton v. Lamb, 260 Ala. 494, 71 So. 2d 289. Therefore, upon proof by the plaintiff of prior possession, he was entitled to a recovery as was charged by the trial court to the jury.

One further observation. The subrogation document does not transfer title in the automobile to anyone. The title is still in the plaintiff regardless of what his testimony might have indicated. His testimony that he claimed no right or interest in the automobile must be read in the light of the other facts and should be interpreted to mean that he was acting under the subrogation agreement to cooperate in every way possible, including suing as was required by the insurance company.

It seems to me the trial court ruled correctly in giving the affirmative charge for the plaintiff.