As finally constituted, the civil action underlying this appeal was prosecuted by Adlee Bruner ("Bruner"), Riverbend Lumber Company, a Florida corporation ("Riverbend"), and Bruner Lumber Company, Inc., a Florida corporation ("Bruner Lumber"), against two agencies of the State of Alabama, the Alabama Forestry Commission ("Forestry") and the State Lands Division of the Alabama Department of Conservation and Natural Resources ("Conservation"). Brought originally in the Geneva Circuit Court, the case was transferred to the Montgomery Circuit Court on Conservation's motion.[1]
The plaintiffs' complaint contained two counts. Count one asserted a claim in detinue seeking possession of 80 pine logs physically in the possession of Forestry and Conservation, alleged to have been recovered after being "sunk while being rafted down the Pea River, a tributary of the Choctawhatchee River," or, alternatively, their value, along with damages for their wrongful detention. Count two sought a judgment declaring the plaintiffs to be the owners of all logs still located in the beds of the Pea River and the Choctawhatchee River in Geneva, Coffee, and Dale Counties, Alabama, bearing certain "brands," as depicted by an exhibit to the complaint, "and all unmarked logs that were rafted with the branded logs."
The exhibit was a copy of a document executed by Bruner, as president of Riverbend, on May 11, 1998, declaring that "pursuant to Florida Statute 536.14" Riverbend had adopted certain "marks, brands, and stamps to distinguish and designate its ownership on floating or sunk *Page 1169 
lumber, logs and timber in the rivers, streams, or water courses of [Florida]." The document stated that the brands were "to be" stamped, branded, or cut into the ends or sides of the logs. Hand drawn on the face of the document were 25 "brands," 11 of which consisted of capital letters of the alphabet, 4 of which were basic geometric shapes, 2 of which were Greek letters, one of which was the numeral "3," and the remaining 5 of which were of random design, e.g., a star, a heart, etc.
The plaintiffs did not purport to bring the detinue claim as a statutory action pursuant to § 6-6-250 et seq., Ala. Code 1975, because their complaint did not ask for seizure or possession of the logs in advance of a final judgment. This fact presents no procedural impediment, however, because "[c]ommon-law detinue still exists in this state and does not involve recovery of property at the time of suit but only after judgment." Richardson v. First Nat'l Bank, 46 Ala. App. 366,371-72, 242 So.2d 676, 680 (1970). Forestry filed a motion to dismiss, asserting, among other things, that it made no claim to the logs and that it was simply storing the logs at Conservation's request. Conservation filed an answer denying all allegations of the detinue count and, as to the declaratory-judgment count, denying that the plaintiffs had any ownership interest in the still submerged logs.[2] Conservation admitted that it claimed ownership of the logs.
Forestry moved for a summary judgment, supported by the affidavit of the deputy legal counsel for Conservation, attesting that "[i]n November of 1997, employees of the Department of Conservation took possession of approximately eighty sunken logs that were being illegally removed from the Pea River in Geneva County, Alabama" and asserting further that Conservation had requested the local Forestry office to allow Conservation to "temporarily store the logs" on its premises. The affidavit acknowledged that after the plaintiffs filed this action, Forestry had requested Conservation to move the logs to another location, but that, because Conservation could not find another suitable location and was concerned about possible damage in transport, it had not removed them. Forestry asserted that it should be dismissed from the case "except possibly for the purpose of injunctive relief only, to make the logs available as the Court directs."
The plaintiffs responded to Forestry's motion; their response indicated that they had no objection to Forestry's "being dismissed with respect to the claim for money damages" but that it should "remain in the suit for the purpose of being required to comply with any injunctive relief which might be granted to Plaintiffs in this cause." However, at no time has the complaint contained a request for injunctive relief.[3]
Conservation filed its own motion for a summary judgment supported by excerpts from the March 1, 2002, deposition of Bruner and an affidavit of Alton Reddick, a resident of Bruce, Florida, who is engaged in the logging business. Reddick attested that he was personally involved in the retrieval in 1997 of the 80 logs from "the bottoms of the navigable waterway *Page 1170 
known as the Pea River, in the State of Alabama" at a point approximately 3 to 4 miles above the Florida state line and that Bruner "was not present at the time of any of the logs . . . were retrieved from the waterbottoms, and he did not give me any direction or information as to the location of these logs." Bruner testified in his deposition to the following: He knew Reddick and the three individuals who worked with Reddick to take the logs out of the river, but they were not working for Bruner. "I had talked with them about the logs, but I wasn't working with them, no . . . the best I can remember, I was going to buy the logs from them. Best I can remember it." One of the men told him that they had retrieved the logs from the tiny portion of the Pea River that dips down into Florida at the southern border of Geneva County. "I wasn't there. They say they came out of the Florida part of the Pea River." Bruner acknowledged that it was fair to say that the logs had "probably been sitting there for a hundred years in these river beds." He did not dispute that the rivers involved in this case are navigable. He did not have "any kind of documents or anything to indicate that these logs . . . were bought by anybody in Florida, originally."
Bruner based his claim of ownership to the logs on a collection of documents attached to his deposition as one exhibit. Two of the papers reflected that J.J. McCaskill and Co. ("McCaskill"), had recorded declarations in Walton County, Florida, in 1887 and 1889, respectively, stating that McCaskill had "adopted" certain symbols depicted on the declarations as its log and timber brands. The brands depicted coincide with the first 20 of the 25 brands listed on the exhibit to the complaint. Another of the documents was a May 20, 1991, quitclaim deed from Angelina M. Levy, an heir of the McCaskills, quitclaiming to Granger Bruner, Bruner's father, all logs bearing the brands shown in the 1887 and 1889 declarations, "situate, lying and being in the County of Walton, Washington, Holmes Bay, State of Florida . . . lying in, along or under the Choctawhatchee River" and its tributaries. Also included in the collection of documents was a "bill of sale" from Granger Bruner to Riverbend, assigning all of his rights in the timber brands conveyed to him by Levy. The rest of the documents consisted of declarations of the adoption of various timber brands, "to be stamped, branded or cut into the ends or sides of logs," executed by Bruner as president of either Riverbend or Bruner Lumber. (Emphasis supplied.) The declarations were dated at various times from April 30, 1996, to April 30, 2000; each was recorded in a county in Florida. Some of the brands were the same as those included in the 1887 and 1889 declarations, but others were completely different. Bruner acknowledged at his deposition that the collection of documents constituted all of the documents "that I can think of at this time" evidencing his claim of ownership to the logs involved in this action.
Florida statutes §§ 536.13 through 536.16 (including § 536.14
referenced in each of the declarations) provide as follows:
"536.13 Stamp or brand for logs
 "Any person engaged in this state in the business or getting out, buying, selling, or manufacturing saw logs, may adopt a stamp or brand for such logs, of such design as she or he may select.
"536.14 Brands to be recorded by clerk of circuit court
 "A person may execute a written declaration that she or he has adopted a brand, describing it, and after acknowledgment of such declaration before any officer authorized to take acknowledgments *Page 1171 
of deeds, may have the same recorded by the clerk of the circuit court in the record of mortgages, in any county in which she or he may desire to own or have in possession saw logs.
"536.15 May prevent use by others
 "Any person who has had her or his brand recorded in any county, may prevent other persons from using the same in said county by a writ of injunction, restraining such use.
"536.16 Prima facie evidence of ownership
 "Any log found in any county branded with a brand recorded in said county by any person shall be deemed prima facie to be the property of such persons."
Bruner testified that "from everybody that I've talked to in Alabama says that Alabama didn't have brands" and he acknowledged that anyone placing logs in rivers for down-river flotation could imprint on them brands identical to the ones he had recorded. "They could be used anywhere anybody wanted to use them." He testified that in Florida there was a permit system whereby a person could purchase a permit to retrieve logs from navigable waterways in that state. He had "called up a couple of times to Alabama" to explore the necessity of a permit for getting logs out of Alabama riverways but "[t]hey said they weren't issuing any permits. So I did not pursue it any further."
As can be seen from Florida statute § 536.16, a log found in a Florida county bearing a brand recorded in that county is prima facie deemed to be the property of the person who recorded the brand. The record reflects that it was the practice in the late 1800s and early 1900s for logs to be floated down the Choctawhatchee and Pea Rivers and their tributaries in Alabama to sawmills located in Choctawhatchee Bay and Tucker Bayou in Florida. According to Bruner, under Florida law the brands "were used to identify the logs when they arrived at the sawmill in order that the sawmill operators would know who owned the logs, from whose land they had been cut and which timber crew had done the harvesting." (Bruner provided no explanation as to how a brand might convey all of that information.) Also, Bruner stated in an affidavit he filed in opposition to Conservation's motion for a summary judgment:
 "8. Some of the logs were bunched together on what was called rafts and they were `rafted' down the river tied by ropes or affixed by other means. In such instances it was common for not all the logs to be branded but rather the outside logs were branded to identify the group.
 "9. While these logs were being floated down the river, often times a portion of the logs were lost either due to a natural disaster such as a flood, hurricane or high water and also logs were lost in curves on the river.
 "10. The logs, which sunk to the bottom of the rivers, while remaining valuable, could not be found and recovered by the owners.
 "11. These logs have been left in the rivers for approximately 100 years and have moved with the various natural disasters and high water, which has flowed through the rivers over this period of time.
 "12. Water passing over these logs and the force with which they have moved down the rivers, have caused the brands to become unidentifiable in some occasions.
 "13. Some of the logs have remained stationary for a long period of time while others have moved down river." *Page 1172 
In the materials filed in opposition to Conservation's summary-judgment motion, the plaintiffs asserted that they were "the owner of all logs branded with certain brands more specifically described in Exhibit 1" attached to Bruner's supporting affidavit. Exhibit 1 is a "Bill of Sale and Conveyance of Title," signed on March 28 and 30 and April 1, 2002, respectively, by three signatories who identified themselves as the sole surviving heirs of the two partners in McCaskill ("the bill of sale"). One of them identified herself in the process as the sole surviving heir of Levy, an intervening McCaskill heir. The bill of sale transferred to Bruner all of the heirs' interest in the brands recorded by McCaskill in 1887 and 1889 and "the rights to said brands in all other counties where such brands may be recorded." Additionally, the document covered "all saw logs and timber lying in, along, or under the Choctawhatchee River, Pea River, or their tributaries located in the States of Alabama and Florida bearing McCaskill brands or unbranded logs bunched with logs or timber bearing McCaskill brands." The bill of sale declared that the two McCaskill partners had died "more than 50 years ago." The text of the plaintiffs' filing in opposition to Conservation's summary-judgment motion makes it clear that the plaintiffs were not basing their claim of ownership of the logs (as opposed to the brands) on any of the documents attached as exhibits to Bruner's deposition, but were relying solely on the bill of sale. The plaintiffs apparently recognized that the 1991 quitclaim deed by Levy could not have released to Granger Bruner anything more than a partial ownership interest, and only as to logs located in Florida bearing a McCaskill brand.
Also attached to the plaintiffs' filing in opposition to Conservation's summary-judgment motion were six pages from the deposition of Don Burdett, identified in the deposition as the "state land resources manager" for Conservation. He described the State's claim to the logs as being based on the understanding that the logs "were abandoned and to our knowledge, no attempt was made by the owner of the property to recover those logs," on the fact that "a lot of these logs had become embedded in the sediments and incorporated as part of the bottoms of these rivers," and on the principle that "[a]ny lands beneath navigable rivers" within Alabama are owned by the State. The plaintiffs argue that whether the logs could be classified as "abandoned" was, at the very least, a question of fact to be resolved by the jury. They quote from Johnson v.Northpointe Apartments, 744 So.2d 899 (Ala. 1999), the propositions that "there is `a presumption that one does not intend to abandon' property of value" and that "'[a]bandonment of property requires intent plus an act. A sufficient act is one that manifests a conscious purpose and intention of the owner of personal property neither to use nor to retake the property into his possession.'" 744 So.2d at 905 (quoting Milford v.Tennessee River Pulp Paper Co., 355 So.2d 687, 689 (Ala. 1978), andWirth v. Heavey, 508 S.W.2d 263, 267 (Mo.Ct.App. 1974), respectively). The plaintiffs take the position that "the logs involved were not abandoned but rather lost," quoting Automobile Insurance Co. v. Kirby,25 Ala. App. 245, 246, 144 So. 123, 124 (1932), for the proposition that "'[g]oods or chattels are lost in the legal sense of the word only when the possession has been casually and involuntarily parted with, so that the mind has no impress of[,] and can have no recourse, to the event." Of course, when and how any particular log might have sunk is not established anywhere in the record, and apparently is beyond establishing. All that the record reflects is that at various times *Page 1173 
approximately 100 years ago, numbers of logs sunk to the bottoms of the Choctawhatchee and Pea Rivers or their tributaries.
On April 18, 2002, the trial court entered a brief order granting Forestry's and Conservation's motions for a summary judgment and dismissing the case. Bruner and Riverbend timely appealed from that order, but Bruner Lumber is not identified in any of the documents initiating the appeal, or in the appellants' briefs, as a party to the appeal. Accordingly, we conclude that Bruner Lumber does not contest the summary judgments as to it and, therefore, we do not address them further.
Bruner and Riverbend (hereinafter referred to jointly as "the appellants") contend that "in Florida, Riverbend purchased all rights to logs with certain brands, under a Florida statute, which provides for the ownership of brands"; that "Riverbend and Bruner purchased a number of log brands and recorded the purchases in the State of Florida"; and that "Bruner also purchased the logs identified by such brands located in the State of Alabama." The appellants' citations to the record in support of those contentions reflect that, with respect to the claim of ownership of those logs located in Alabama, they rely only on the 2002 bill of sale. As previously noted, that is consistent with the position they took in opposition to Conservation's motion for a summary judgment. Even if the appellants had not abandoned their reliance on the various materials Bruner produced at his deposition, those materials would have been unavailing as proof of ownership or as showing a right of possession of the logs. The Levy quitclaim deed represented only a minority heirship interest and dealt only with "chattel property situate . . . in" Florida. The Florida brand-recording statutes had legal effect only within Florida. The bill of sale executed by Granger Bruner assigned to Riverbend only those rights "in any and all timber brands conveyed by Angeline M. Levy," in contrast to her broader quitclaim to him including "all saw logs and timber" in the specified Florida riverways. None of the only five declarations recorded in the name of Riverbend cover any of the McCaskill brands, depicting rather only "new" brands adopted by Riverbend. Among them are the last 5 of the brands in the 25 brands listed on the exhibit to the complaint. All of those declarations, the earliest of which was recorded in April 1996, related prospectively to brands "to be" stamped on, or otherwise affixed to, logs. Consequently, given all of those considerations, the documents produced by Bruner at his deposition were ineffectual to establish in Alabama that he had any ownership interest in any of the logs in question.
Because Bruner was the only named vendee of the interests and rights covered by the bill of sale, and because there is no suggestion in the record that he ever transferred those interests and rights to Riverbend, Riverbend cannot rely on the bill of sale as evidence of its ownership of any of the logs. Accordingly, the summary judgment as to Riverbend is due to be affirmed on that basis alone.
Although the McCaskill heirs purport in the 2002 bill of sale to sell and transfer to Bruner all of their ownership in the described logs, neither the bill of sale nor anything else in the record purports to place any ownership of the logs in McCaskill in the first instance. The 1887 and 1889 McCaskill declarations of the adoption of certain brands were recorded only in Walton County, Florida. Even there, they had only the limited effect of establishing prima facie evidence of McCaskill's ownership of any log found in Walton County bearing a brand shown on the *Page 1174 
declarations. Thus, the appellants have failed to show any actual or original ownership or right of possession by McCaskill in any of the 80 logs found in Alabama. In pointing out that missing element, as to which the appellants had the burden of proof, Conservation, as movant for a summary judgment, satisfied its burden of production and the burden then shifted to the appellants to present sufficient evidence of ownership. See Verchot v. General Motors Corp., 812 So.2d 296, 300 (Ala. 2001). They did not carry that burden. On that basis alone, we would uphold the summary judgment denying Bruner's claims of ownership or right of possession of the 80 logs.
Moreover, the only proof of ownership relied on by Bruner in the final analysis is that ownership purportedly vested in him by the bill of sale. The plaintiffs filed their complaint on May 15, 1998, and although they amended it once in March 2002 to rename, add, and eliminate parties, they never moved to amend it pursuant to Rule 15(d), Ala.R.Civ.P., to submit a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleadings sought to be supplemented." Thus, they never pleaded ownership arising from the "after-the-fact" bill of sale.
In Alabama, "[i]t is elementary that the gist of [a detinue action] is the wrongful detention. It is also elementary that the plaintiff must have the right to the possession of the chattel at the commencement ofthe suit, in order to recover." Jesse French Piano Organ Co. v.Bradley, 138 Ala. 177, 180, 35 So. 44, 44 (1902) (emphasis supplied). See, to like effect, Galleon Indus., Inc. v. Lewyn Mach. Co.,50 Ala. App. 334, 279 So.2d 137 (1973); Chrysler Credit Corp. v. Tremer,48 Ala. App. 675, 267 So.2d 467 (1972); Hollingsworth v. Case,267 Ala. 165, 100 So.2d 772 (1957); First Nat'l Bank v. Crawford,227 Ala. 188, 149 So. 228 (1933); and Donahoo Horse Mule Co. v.Durick, 193 Ala. 456, 69 So. 545 (1915). Thus, the summary judgment was proper as to Bruner's detinue claim because, in addition to the reasons already discussed, Bruner had no right of possession to the 80 logs when this action began, and even if, contrary to the rule of Bradley and the other cases cited, after-acquired title could retroactively suffice if pleaded, the plaintiffs never moved to amend their complaint, as allowed by Rule 15(d), Ala.R.Civ.P., to reference the 2002 transaction evidenced by the bill of sale.
Likewise, there is an additional basis for affirming the summary judgments as to the declaratory-judgment count relating to logs that might be found in the Pea and Choctawhatchee Rivers in the future.
 "[Bruner] does not contend that he owns every sunken dead-head log found in the rivers of the geographical areas upon which the suit is based. He contends that he owns certain of those logs, which he can identify as his property. It may well be that the evidence shows that some of the logs are embedded and certainly the evidence shows that other logs are not embedded but move with the currents."
Appellants' Reply Brief, pp. 5-6. In that regard, the appellants further assert in their reply brief that in this case "there are numerous pieces of property[,] each of which will have its own `story.'" One aspect of the "story" of each log submerged under the navigable waterways of Alabama will be whether the log is embedded in the river bottom soil. Bruner does not challenge the position taken by the State that logs found embedded in the riverbed of a navigable waterway belong to the State as the owner of the riverbed. "It has long been settled that the State of Alabama has title to the submerged lands *Page 1175 
in navigable waters . . . ." Reid v. State, 373 So.2d 1071, 1074 (Ala. 1979) (citing cases going back to 1840). The State argues that although the "common law of finds" generally assigns ownership of abandoned property without regard to where the property is found, an exception to that rule is that "when the abandoned property is embedded in the soil, it belongs to the owner of the soil . . . ." Klein v. UnidentifiedWrecked Abandoned Sailing Vessel, 758 F.2d 1511, 1514 (11th Cir. 1985). As discussed in Chance v. Certain Artifacts Found Salvagedfrom the Nashville, 606 F. Supp. 801 (S.D.Ga. 1984), case precedent establishes that "property need not be totally buried to satisfy the embeddedness requirement. What is affixed to the land belongs to the owner of that land." 606 F. Supp at 806. "Property which has become a part of the natural earth is not subject to the general rule of lost or mislaid property; such property belongs to the owner of the real estate upon which it is found." 1 Am. Jur.2d, Abandoned, Lost, etc., Property
§ 29, p. 36.
Although Conservation asserts in its brief to this Court that it made a prima facie showing "that the logs involved in this case were embedded in the bottoms of the State of Alabama-owned navigable waterways," and further asserts that "the plaintiffs admit that they are seeking ownership of abandoned logs that have been embedded in navigable Alabama waterways . . .," the appellants deny those assertions, and the portions of the record Conservation cites in support are inconclusive. For example, Conservation references a page of Bruner's deposition where, upon being asked whether "these logs are embedded in the bottom of the waterways that we are talking about; right," Bruner answered simply, "They are in the bottom of the waterways." The other cited portions of the record reflect only that the logs have been submerged for approximately 100 years. Burdett testified that "a lot of [the 80 retrieved] logs had become embedded in the sediments and incorporated as a part of the bottoms of these rivers" (emphasis added), but Bruner asserted in his affidavit that, based on his years of experience, he knew that the logs in question would "have moved with the various natural disasters and high water." He affirmed that although "some of the logs have remained stationary for a long period of time, . . . others have moved down river." Clearly the "embedded" status of logs submerged but as yet unfound will be important to, if not determinative of, ownership, but that status cannot presently be predicted.
Declaratory-judgment actions in Alabama are governed by the Declaratory Judgment Act, codified at §§ 6-6-220 through 232, Ala. Code 1975 ("the Act"). The Act does not "`empower courts to decide moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided for the government of future cases.'" Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944
(Ala. 1994) (quoting Town of Warrior v. Blaylock, 275 Ala. 113, 114,152 So.2d 661, 662 (1963)) (emphasis added in Stamps). Pursuant to §6-6-226, declaratory relief may be afforded in cases "in which a judgment will terminate the controversy or remove the uncertainty," but §6-6-229 emphasizes the corollary that "[t]he court may refuse to enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding."
In their declaratory-judgment action, the plaintiffs asked the trial court to declare them the owners of all logs bearing certain brands, and associated unbranded logs, lying in the Choctawhatchee River *Page 1176 
and its tributaries in three Alabama counties. Determination of that ownership would require the trial court to speculate on presently undeterminable circumstances. There may be no logs remaining in the specified river systems that bear McCaskill brands (those being the only logs Bruner could claim ownership to, assuming McCaskill originally owned them). Any logs that do bear a McCaskill brand may never be located. Any imprinted brand may not be readily discernible, thereby requiring a specific viewing and interpretation by the fact-finder. It will be difficult, if not impossible, to determine what unbranded logs might have been rafted with branded logs. Any logs located, assuming a tentative determination of brands can be made underwater, may be unrecoverable by Bruner for want of a necessary contract with, or permit issued by, the State of Alabama.
Furthermore, even a log bearing one of the brands adopted by McCaskill in 1887 and 1889 may be a log thus branded by someone else and in fact never owned by McCaskill. As Bruner acknowledged in his deposition, the mere fact that McCaskill recorded certain log brands in Walton County, Florida, would not have prevented persons elsewhere from using that same brand. As explained at the beginning of this opinion, the 20 McCaskill brands were mostly basic and common designs, including 11 capital letters. It was apparently a common practice throughout the Southeast to brand logs introduced into navigable waterways for transport to distant mills. See J.A. Bel Lumber Co. v. Stout, 134 La. 987, 64 So. 881 (1914). We take judicial notice that the Pea River flows south through Coffee County, Alabama, for many miles and that the Choctawhatchee River flows south through Dale County for many miles and that they converge in Geneva County just below the City of Geneva, to continue flowing into Florida as the Choctawhatchee River. Thus, it is obvious, as a geographical fact, that there would have been widespread opportunity for different persons to brand logs and place them into that extensive river system.
All of these possibilities and uncertaines, which allow a potential separate "story" for any log found submerged anywhere along that river system, would serve to render any declaratory judgment relating to Bruner's ownership essentially an advisory opinion and one that "would not terminate the uncertainty or controversy giving rise to proceeding." Therefore, the trial judge in this case acted well within the discretion accorded him by § 6-6-229 in declining prospectively to declare ownership of the logs in Bruner.
Although Conservation has not argued to us all of the principles discussed above as justifying the summary judgment, "[w]e will affirm a summary judgment if it is right on any ground developed in, and supported by, the record." Ex parte Ramsay, 829 So.2d 146, 155 (Ala. 2002).
 Conclusion
We need not address the summary judgments entered against Bruner Lumber because it has not appealed from those judgments. We affirm the summary judgment entered against Riverbend because the record contains no evidence of title in Riverbend to any of the logs in question. We affirm the summary judgment as to Forestry not only on the merits but also because the plaintiffs conceded that the summary judgment might be properly entered in Forestry's favor except for possible injunctive relief, and no injunctive relief has been sought. We affirm the summary judgment against Bruner and in favor of Conservation because Conservation successfully established the lack of evidence in the record of any ownership or right of possession *Page 1177 
in Bruner to the logs. Furthermore, Conservation is entitled to a summary judgment as to the detinue claim because Bruner made no showing of title existing in him when the complaint was filed, and it is entitled to a summary judgment as to the declaratory-judgment action because the declaration of ownership Bruner sought would be advisory and "would not terminate the uncertainty or controversy giving rise to the proceeding." Accordingly, the summary judgments are affirmed in every aspect against Bruner and Riverbend and in favor of Forestry and Conservation.
AFFIRMED.
MOORE, C.J., and SEE, BROWN, and STUART, JJ., concur.
[1] The motion to transfer filed by Conservation stated, among other things: "The `Geneva County Forestry Department,' listed as a Defendant by Plaintiffs, is in fact the Alabama State Forestry Commission, an agency of the State of Alabama . . . ."
[2] Conservation also asserted the affirmative defense of "sovereign immunity as set forth in Article I, Section 14, of the Constitution ofAlabama of 1901"; it does not, however, argue that defense on appeal.
[3] The plaintiffs essentially waived any objection to a summary judgment for Forestry as to all but possible injunctive relief, and nowhere in their appellate briefs do they protest the summary judgment entered for Forestry. Forestry, in turn, has not filed a brief on appeal.