968 So.2d 534 (2006)
ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
v.
ASSOCIATION OF REGIONAL COUNCILS.
2040978.
Court of Civil Appeals of Alabama.
July 28, 2006.
*535 Troy King, atty. gen., and Paul Christian Sasser, Jr., asst. atty. gen., for appellant Alabama Department of Environmental Management.
J. Doyle Fuller and Susan G. Copeland of Law Office of J. Doyle Fuller, PC, Montgomery, for appellee.
CRAWLEY, Presiding Judge.
This is an appeal from a declaratory judgment. The Association of Regional Councils ("ARC") sued the Alabama Department of Environmental Management ("ADEM"), alleging that a lack of data and guidelines supplied by ADEM, as well as a lack of funding at the disposal of ARC's member regional commissions,[1] compelled a moratorium on the regional commissions' performance of their statutory duty to issue "statements of consistency" to parties seeking approval of proposed solid-waste-disposal sites.[2]
The trial court entered a judgment declaring that the ARC member commissions cannot perform their statutory duties and granted a moratorium on performing such duties until the commissions can be properly funded and provided with sufficient guidelines and reliable data to permit the appropriate discharge of the duties imposed on them. Following the entry of the final judgment, the National Solid Waste Management Association ("NSWMA") filed a motion to intervene and to clarify the judgment. The trial court allowed the intervention, and it modified its judgment to hold that the moratorium also precludes ADEM from requiring statements of consistency to accompany permit applications during the term of the moratorium. ADEM timely appealed, arguing that ARC's suit against ADEM does not present a justiciable controversy. ADEM did not appeal from the judgment insofar as it related to NSWMA. We hold that this case does not present a justiciable controversy, and we dismiss this appeal.

I. Factual Background
In short, ARC contended to the trial court that its member commissions were incapable of performing their statutory duties because ADEM was not properly helping the commissions perform those duties. However, additional background details are essential in understanding this case.
When enacting the Solid Waste Management Plan Act, § 22-27-40 et seq., Ala. Code 1975, our state legislature made several findings. Among those findings were that there was "an emerging crisis in solid waste management" and that "[t]he absence of comprehensive planning will result in the random, haphazard siting of waste disposal services without relation to the actual needs of particular localities in the state." § 22-27-40(1) and (10), Ala. Code 1975.
To address those concerns, the state established by statute, § 11-85-1 et seq., Ala.Code 1975, that regional planning and development commissions, each encompassing at least several adjoining counties, should develop a plan for their region that *536 would address several important concerns, including the need for solid-waste disposal.
Pursuant to § 22-27-48(a), Ala.Code 1975, an applicant for a new permit for a solid-waste-disposal site, i.e., a landfill, first must seek approval from the local governing body in the area in which the site will be located. Following the local government's approval, the applicant must obtain a "statement of consistency" from the regional planning commission, stating that the proposed landfill is consistent with the region's overall plan. § 22-27-48(b), Ala.Code 1975. Finally, the applicant must submit materials, including the statement of consistency, to ADEM for final approval.
Most of the relevant statutory duties of the regional commissions in this process are outlined in § 22-27-46, § 22-27-48, and Ala. Admin. Code (ADEM), r. 335-13-9-.05. Section 22-27-46 provides as follows:
"(a) Not later than six months from May 16, 1989, each regional planning and development commission in the state shall prepare and adopt a regional needs assessment evaluating solid waste management needs in their respective regions. This regional needs assessment shall be submitted to the department for information and review and shall be considered by units of local government within the region in the development of their individual plans as required herein. Thereafter, the assessment shall be revised and submitted to the department and local governments in the region annually. The regional needs assessment shall include, at a minimum, the following:

"(1) An evaluation of the amount of solid waste generated within the region and the amount of remaining disposal capacity, expressed in years, at each solid waste disposal facility within the region;
"(2) An evaluation of the needs of all localities within the district as to the adequacy or inadequacy of solid waste collection, transportation and disposal within those localities;
"(3) A projection of the expected population and business growth in the region, including specific estimates of the types of businesses which may be entering and leaving the region and the resulting impact such changes will likely have on waste volumes generated in the region;
"(4) An evaluation of the environmental, economic and other relevant factors which would be implicated by acceptance of solid waste from beyond the boundaries of the region.
"(b) In addition to the development of and periodic revision of an assessment of the region's solid waste management needs, each regional planning commission shall:

"(1) Evaluate, as necessary, the solid waste management needs of all local governments within their regions;
"(2) Formulate, as requested, recommendations to local governments on solid waste management issues including the feasibility of joint efforts within the region acting to develop and operate a solid waste management or disposal facility and foster cooperation on such matters;
"(3) Provide, upon request, assistance to local governments within the region to formulate their own plans for evaluating needs and providing adequate solid waste management within their jurisdictions; and
"(4) Serve as a clearinghouse for local governments in the region regarding solid waste management information."
*537 (Emphasis added.) Also, § 22-27-48, Ala. Code 1975, in part, requires:
"(b) Following local review and approval of any proposal regarding services or activities described in the local solid waste management plan, the applicant shall obtain a statement of consistency from the Regional Planning and Development Commission. Therein, the said commission shall evaluate the proposal using the provisions of the current regional solid waste management needs assessment. In particular, the regional commission shall evaluate the proposal as it relates to available existing capacity within the region and the projected lifetime of such capacity. The evaluation shall also identify any proposed capacity which is in excess of expected regional needs. No statement of consistency shall be required for contracts exclusively for the collection or transportation of solid wastes."
(Emphasis added.) The pertinent regulation promulgated by ADEM essentially tracks the statutory language of § 22-27-46, but it provides a few more details. The regulation, Ala. Admin. Code (ADEM), r. 335-13-9-.05, provides:
"(1) Each regional planning and development commission or council in the state shall prepare and adopt a regional needs assessment evaluating solid waste management needs in their respective regions as required by Code of Ala.1975, §§ 22-27-46. The regional needs assessment shall be prepared each year and submitted to the Department and to local governments in their region.
"(2) The regional needs assessment shall include, at a minimum, the following:
"(a) An evaluation of the amount of solid waste generated within the region and the amount of remaining design disposal capacity, expressed in years, at each solid waste disposal facility within the region.
"(b) An evaluation of the needs of all localities within the region as to the adequacy or inadequacy of solid waste collection, transportation and disposal within those localities.
"(c) A projection of the expected population and business growth in the region, including specific estimates of the types of businesses which may be entering and leaving the region and the resulting impact these changes will likely have on waste volumes generated in the region.
"(d) An evaluation of the environmental, economic and other relevant factors which would be implicated by acceptance of solid waste from beyond the boundaries of the region.
"(3) Each landfill permitted by [ADEM] must provide to the regional planning and development commission or council serving the county in which the facility is located the information as may be necessary to complete the annual regional needs assessment and shall be reported in the following manner:

"(a) Information shall be reported using forms developed by [ADEM] in consultation with the regional planning and development commission or council requesting the information.
"(b) Information shall be submitted to the regional planning and development commission or council not later than March 31 of each calendar year for the immediate past calendar year. However, the first reported information will be due March 31, 2003.
"(4) Annual needs assessments shall be prepared and submitted to [ADEM] and to local governments in their region not later than November 16 of each calendar year. The needs of all governing *538 bodies of the county or municipality with responsibility for solid waste management plans within the region of each regional planning and development commission or council shall be evaluated and reported. The first regional needs assessment utilizing data reported under 335-13-9-.05(3) shall be submitted to [ADEM] and to local governments in their region not later than November 16, 2003."
(Emphasis added.) Thus, it is evident that the relevant statutes and regulations require each regional commission to create a regional "needs assessment" evaluating the solid-waste-management needs for their region, and then to determine whether a proposed new landfill, or a proposed modification of an existing landfill is consistent with the needs of the region. Section 22-27-48(b), Ala.Code 1975, compels a regional commission to evaluate a proposal as it "relates to the available existing capacity within the region and the projected lifetime of such capacity." Additionally, the statute requires a regional commission to "identify any proposed capacity which is in excess of expected regional needs." Id.
ARC alleged at trial that its member commissions lacked the guidelines and data from ADEM and the funding from the legislature necessary to perform their statutory duties. Regarding the lack of funding, ARC argued that the member commissions lacked the funding necessary to adequately perform the studies necessary to assess a region's needs and to determine whether an applicant's proposal was consistent with the region's needs and long-range plan. Additionally, ARC argued that only ADEM could obtain certain data, or promulgate guidelines, that the commissions needed to perform their statutory duties. ARC argued that these problems effected the commissions' performance of their statutory duties and left them vulnerable to suit from third parties, such as counties or landfill applicants.
Regarding the data that ARC alleged only ADEM had in its possession or could obtain, the record is not clear that ARC or its member commissions properly requested that information before the trial began. At the trial, John Clyde Riggs, a witness for ARC and the executive director of the Alabama Tombigbee Regional Commission[3] located in Camden, testified that he was concerned that the commission would be sued by one of the counties in his region if the commission deemed an application for a new landfill in a particular county necessary. He also testified as follows:
"Q [the trial judge]. Okay. Fine. Now, is ADEM required under the legislature, in your opinion, to provide you with the staff or the money to enable you to get that information to provide to them?
"A [John Clyde Riggs]. No, sir.
"Q. Okay. So you're independent You're independent of ADEM as far as staff and funds to provide this information?
"A. That's correct.
". . . .
"Q [attorney for ADEM]. So you're saying that you don't assert that ADEMthat you have controversy with ADEM over the quality of the Needs Assessment or the Statement of Consistency; is that correct?
"A [John Clyde Riggs]. The fact that ADEM is willing to accept that, it's no problem on that.

*539 "Q. Your controversy, really, is that some of these counties have threatened to sue you, correct?
"A. No. Our controversy is that we cannot perform these duties as set forth by law.
"Q. But who is saying that? Who is telling you that? The counties, right?
"A. That's right. Actually, it's the counties, it's anybody that's opposing the legislation.
"Q. It's not ADEM, right?
"A. No. But we have no other alternative but to go at the legislation, and the fact that ADEM is the one that is providing us the guidelines, and telling us how to collect the data; which is not reasonable to make those assumptions."
ARC's suit sought a declaratory judgment that would relieve the commissions from the performance of their statutory duties so that the commissions would not be subject to potential liability stemming from ADEM's failure to adequately help the commissions. The trial court made the following factual finding:
"Based upon the evidence presented to the Court in this case, the Court finds that the members of [ARC] have not been provided with guidelines sufficient to allow them to perform the duties imposed upon them, that they have not been granted the authority to require the submission of sufficient reliable data to allow them to perform their functions, and they have not been provided any funding to finance the work they are being required to perform."
The trial court then noted that, in some circumstances, such as in this case, a statute may be deemed impossible to execute and therefore inoperative and void.
The trial court went on to state that, "[a]lthough the management of solid waste is clearly a matter of significant importance to the public, the legislature cannot lawfully require persons or entities within the state to perform tasks that such persons or entities are incapable of performing." The trial court then, in relevant part, concluded:
"1. That the members of [ARC] cannot properly perform their duties imposed upon them by virtue of the provision of Code of Ala.1975, § 22-27-46, § 22-27-47, and § 22-27-48, due to the lack of funds to do so, and due to the absence of sufficient guidelines and reliable data that is available to them.
"2. It is so impractical to impose upon [ARC's] members the responsibilities involved, that they are entitled to a moratorium upon such duties until such time as they can be properly funded and provided with sufficient guidelines and reliable data to permit the appropriate discharge of the duties imposed upon them.
"3. The members of [ARC] have already requested relief under the provisions of Code of Ala.1975, § 6-6-230, and the Court therefore hereby imposes a moratorium upon the performance of the duties of such members until such time as funding is secured and appropriate guidelines and data are available to them."
As noted above, following the trial court's judgment, NSWMA intervened in the case, and a moratorium was granted on the statutory requirement that applicants for a solid-waste-disposal permit or a permit modification must submit to ADEM a statement of consistency from the pertinent regional commission.
The result of the trial court's judgment is that currently the regional commissions are not required to ensure that a proposed change to a region's solid-waste-disposal capacity is consistent with the region's overall plan. Additionally, those who seek a landfill permit or a change to a landfill *540 permit are no longer required to submit to ADEM a "statement of consistency" from the relevant regional commission indicating that the proposed change is consistent with the region's needs and overall solid-waste-disposal plan.
ADEM appealed the judgment of the trial court, arguing that the action did not present a justiciable controversy between ARC and ADEM.

II. Discussion
Our supreme court recently recited some of the general principles regarding declaratory-judgment actions and justiciable controversies in Bedsole v. Goodloe, 912 So.2d 508, 518 (Ala.2005), which we find applicable to this case.
"The Declaratory Judgment Act, §§ 6-6-220 through -232, Ala.Code 1975, `does not "`empower courts to . . . give advisory opinions, however convenient it might be to have these questions decided for the government of future cases.'"' Bruner v. Geneva County Forestry Dep't, 865 So.2d 1167, 1175 (Ala.2003)(quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994) (quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) ) (emphasis added in Stamps). This Court has emphasized that declaratory-judgment actions must `settle a "bona fide justiciable controversy."' Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Gulf South Conference v. Boyd, 369 So.2d 553, 557 (Ala.1979)). The controversy must be `"definite and concrete,"' must be `"real and substantial,"' and must seek relief by asserting a claim opposed to the interest of another party `"upon a state of facts which must have accrued.'" Baldwin County, 854 So.2d at 45 (quoting Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)). `"Declaratory judgment proceedings will not lie for an `anticipated controversy."'" Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (quoting City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ. App.1999)). Thus, if a declaratory judgment would not terminate any uncertainty or controversy, the court should not enter such a judgment. Bruner, 865 So.2d at 1175."
ADEM argues, among other things, that this case does not present a justiciable controversy between ARC and ADEM, because ADEM has not questioned the commissions' performance of their statutory duties and any potential challenges to the commissions' performance of those duties would come from third parties. For this argument, ADEM relies primarily on Baldwin County v. Bay Minette, 854 So.2d 42 (Ala.2003), which states:
"To be valid, a declaratory judgment must settle a `bona fide justiciable controversy.' Gulf South Conference v. Boyd, 369 So.2d 553, 557 (Ala.1979).
"`To be justiciable, the controversy must be one that is appropriate for judicial determination. It must be a controversy which is definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a [judgment]. "A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded . . ." Anderson, Actions for Declaratory Judgments, Volume 1, § 14.'
"Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969) (emphasis added). `Thus, "[d]eclaratory judgment proceedings will not lie for an *541 `anticipated controversy.'"' Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002)(quoting City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App.1999)) (emphasis added). Moreover, `justiciability is jurisdictional,' Ex parte State ex rel. James, 711 So.2d 952, 960 n. 2 (Ala.1998); hence, if necessary, `this Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction.' Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)."
854 So.2d at 45.
The Baldwin County court went on to describe a factual situation similar to the one in this case. In Baldwin County, Baldwin County brought an action against various municipalities within the county, seeking a judgment declaring that it had the exclusive right to issue building permits and to conduct building inspections within the police jurisdiction of the cities. Our supreme court noted that, on the face of the complaint, no controversy existed between the county and eight of the named cities in the complaint. 854 So.2d at 42. As to the county's claims against the cities that allegedly did issue building permits, our supreme court held that it was "only slightly less obvious" that the court also lacks jurisdiction over the action. 854 So.2d at 46. The reason for the lack of jurisdiction was the lack of an existent factual scenario from which to frame a controversy. Baldwin County had argued several hypotheticals, including that residents of the various municipalities may be harmed if they do not know they have not complied with all the requirements for building inspections in the county. Id. In other words, the county posited several situations in which the injury was hypothetical, but it did not allege any existing injury. Id. The Baldwin County court went on to hold:
"The County does not describe an existing dispute that is `definite and concrete,' or `real and substantial.' Copeland v. Jefferson County, 284 Ala. [558] at 561, 226 So.2d [385] at 387 (1969). Nowhere does the county allege that this, or any similar, scenario has, in fact, occurred."
854 So.2d at 46. In short, the court concluded, the county had alleged only an anticipated controversy for which a declaratory-judgment action will not lie. Id. Thus, the county had sought an advisory opinion, which courts, under the declaratory-judgment statutes, are not empowered to decide. 854 So.2d at 47. This case is substantially similar to Baldwin County, despite superficial differences.
In this case, ARC has sued ADEM arguing that because ARC's member commissions do not have enough funding,[4] and because ADEM has not provided them with proper guidelines or sufficient data necessary to determine their respective regional solid-waste-disposal needs, the commissions cannot properly determine their region's needs or whether to issue a statement of consistency regarding proposed landfills, or proposed changes to landfills in their regions. Thus, ARC argues, it is because of ADEM's lack of help that the commissions are in danger of lawsuits from, for example, either those who want a new landfill or those who do not want a new landfill in their county or in their neighboring county.
In short, it appears that the suit by ARC anticipates a controversy, with adversaries *542 not a party to this suit, that may result from its performance of its member commissions' statutorily mandated duties. We note that ARC has not sought to compel ADEM to take any action. Additionally, ARC has not claimed that ADEM is threatening the regional commissions with a lawsuit, and ADEM asserts that it does not intend to do so. Thus, it is evident that, like the plaintiff in Baldwin County, ARC has alleged a hypothetical controversy. Granted, the problems ARC's member commissions face are real, but, at heart, this controversy is only an anticipated controversy, and thus is not a justiciable controversy.
ARC argues that the holding in Gibbs v. Cochran, 281 Ala. 22, 198 So.2d 607 (1967), indicates that ARC did not need to have proceedings instigated against it to present a justiciable controversy; however, Gibbs is distinguishable. In Gibbs, the plaintiffs were engaged in or connected with the business of dispersing drugs in Mobile County. 281 Ala. at 23, 198 So.2d at 607. The plaintiffs were not registered pharmacists, but they performed the duties of pharmacists. Id. The plaintiffs sued the Board of Pharmacy of the State of Alabama ("the Board"), alleging that a new regulation adopted by the Board was unconstitutional and unenforceable in that it attempted to abridge, modify, or contradicted to the law of the State of Alabama. Id. Our supreme court held that plaintiffs were adversely affected by the new regulation, and that the controversy was justiciable despite the fact that there was no allegation that the Board or any other agency had instituted proceedings against the plaintiffs for a violation of that regulation. 281 Ala. at 25, 198 So.2d at 609. Importantly, the new regulation potentially would require the plaintiffs to abandon their pharmacy practices and was also, the plaintiffs argued, in conflict with an Alabama statute. The supreme court reached its conclusion by analyzing the interplay between several statutes, and it ultimately determined that our state legislature intended to permit nonregistered pharmacists to work under the supervision of a registered pharmacist and that, therefore, the statute at issue should not be construed as delegating to the Board the authority to make illegal activities that are not prohibited by statute. 281 Ala. at 26, 198 So.2d at 610.
The controversy in Gibbs was real, and not merely hypothetical. In contrast, ARC's lawsuit alleged a problem that was at least in part due to ADEM's failure to provide enough support to the regional commissions, but the potential controversy would be with hypothetical third parties seeking to construct new or to modify existing landfills. Although it is true that a party does not need to have proceedings instituted against it before a controversy becomes real, it is also true that a declaratory judgment will not lie for an anticipated controversy. Creola Land Development, Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). A controversy must be "definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a decree." Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969). In this case, ARC does not allege a definite and concrete controversy with ADEM.
ARC also argues that ADEM was the local government's "virtual representative", and that, therefore, the case presents a justiciable controversy and the judgment can bind nonparties, such as a county. However, we cannot agree that ADEM adequately represented the interests of those nonparties in the action. Nothing in the record indicates that *543 ADEM was in privity with the hypothetical adversaries in this case. Morris v. Cornerstone Propane Partners, L.P., 884 So.2d 796, 798 (Ala.2003)(stating that to support a finding of virtual representation the parties in an earlier action must have been in some sense proper agents for the latter parties, and noting that an elastic concept of privity violates due process of law).
Thus, it appears that the member commissions of ARC are presented with a legitimate obstacle to their performance of their statutory duties, but that particular controversy is with hypothetical adversaries, not with ADEM. The real potential conflict here is with the parties who may wish to obtain a statement of consistency. ARC did not seek to declare its statutory duties unconstitutional, nor did it seek an order compelling ADEM to perform any particular task or duty. Instead, ARC merely wanted to avoid the risk of liability in the event its performance of statutory duties upset someone. Such a purpose does not present a justiciable controversy.

III. Conclusion
We sympathize with ARC and the regional commissions' fear of a lawsuit resulting from what they perceive as their inability to perform their statutory duties as a result of inadequate funding from the legislature or the lack of needed assistance and guidelines from ADEM. However, we must hold that the problem ARC and its member commissions face is not a controversy that is definite and concrete with a party holding an adverse legal interest. This case represents a desire on behalf of the commissions to insulate themselves from potential controversy with potential future litigants, and thus it does not present a justiciable controversy; therefore we must dismiss this appeal. In doing so, the moratoriums imposed by the trial court necessarily must be vacated. Our decision today, we hope, will have the additional benefit of ensuring that solid-waste-disposal sites will not be developed haphazardly, as they potentially could be during the previously installed moratoriums.
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
BRYAN, J., recuses himself.
NOTES
[1] The regional commissions are sometimes referred to as regional councils in the briefs of the parties, and the terms appear to be interchangeable; however, for the sake of consistency, we refer to them in this opinion as commissions.
[2] ARC is an association of "regional planning and development commissions." Those commissions are individually tasked by statute with, among other things, planning for their respective region's solid-waste-disposal needs.
[3] The counties encompassed by this regional commission are Conecuh, Monroe, Clarke, Washington, Choctaw, Sumter, Marengo, Perry, Dallas, and Wilcox counties.
[4] ADEM points out that ARC's member commissions have the capacity to raise funds on their own, pursuant to § 11-85-56(12), Ala. Code 1975, which specifically states that regional commissions may "[c]harge fees for services performed by the commission."