153 So.2d 619

**ALABAMA-TENNESSEE NATURAL GAS CO.**

v.

**CITY OF HUNTSVILLE.**

**8 Div. 112.**

Supreme Court of Alabama.

April 11, 1963.

Rehearing Denied May 30, 1963.

Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, for appellant.

Lanier, Price, Shaver & Lanier, Huntsville, for appellee.

MacDonald Gallion, Atty. Gen., and J. Taylor Hardin, Asst. Atty. Gen., for Ala. Public Service Comm., amicus curiae.

Bishop & Carlton, Birmingham, for Muscle Shoals Nat. Gas Corp., amicus curiae.

PER CURIAM.

This is an appeal from a declaratory judgment or decree entered by the Circuit Court of Madison County, Alabama, in Equity, purporting to declare the rights, duties, status and legal relations of the parties to this cause under and arising from an agreement termed a "Gas Sales Contract."

The matter in dispute is the sales area of appellee, City of Huntsville, granted to it in a contract between appellee and appellant, Alabama-Tennessee Natural Gas Company.

Appellant, a Delaware corporation, operated a natural gas line in interstate commerce, serving appellee and other communities in Alabama, Tennessee and Mississippi with natural gas, and is subject to jurisdiction of, and under rates approved by, the Federal Power Commission.

Appellee is a municipal corporation in Madison County and is engaged in the operation of a natural gas distribution system within its corporate limits and in certain surrounding territory; and it purchases natural gas from appellant and sells it under rates fixed by city ordinance.

The original contract between the parties was executed in June, 1950, and although certain modifications have been made since then, the same area of service section has been carried forward in all subsequent contracts. It reads:

"The area of service of the Buyer, for the purpose of this agreement only shall consist of—the area within the corporate limits of the City of Huntsville, Alabama. In addition to this area, Buyer shall have the exclusive right to sell gas in Madison County, Alabama except to other municipalities and within their police jurisdiction. However, if Buyer does not enter into an agreement to serve any customer within 120 days after application for service, its exclusive right to serve that customer shall cease."

The controversy and the dispute as to the interpretation of the contract arose when the United States requested both appellant and appellee to quote rates for the supplying of natural gas for use at Redstone Arsenal. Appellee contends that the contract gives it the exclusive right to serve Redstone Arsenal if an application for service is made. Appellant contends that its rights are not limited by the contract and that it has the right to deal directly with the government.

Sometime during the period between 1942 and 1943, the United States Government acquired certain lands approximating 44,000 acres in Madison County, Alabama, by purchase and condemnation for the purpose of erecting and maintaining thereon arsenals, magazines and other needful buildings of a military nature. This purchase was made in accordance with and under the authority of the Constitution of the United States, Art. I, Sec. 8, Clause 17.

By two patents, dated respectively 2 November 1942 and 9 April 1943, the State of Alabama ceded jurisdiction over said lands to the United States. Said cession was made pursuant to Tit. 59, §§ 18 and 19, Code 1940.

The bill further alleged that in the last several years, Redstone Arsenal has become the principal center for experimental and testing projects on rockets, missiles and other weapons of an advanced scientific nature. Because of this increase in these operations in and around the Huntsville and Redstone area, larger amounts of natural gas for varied purposes are in demand. Any agency proposing to furnish gas for

such fuel purposes must have available at all times a sufficient and dependable supply of gas.

The bill prayed for a final decree declaring the rights, duties, status and legal relations of the parties and particularly adjudicating and declaring the following:

(a) That the Service Agreement creates no right in respondent of such nature that complainant cannot sell or furnish gas to the United States Government for use in Redstone Arsenal, or of such nature that complainant cannot do so without breaching a legal duty to the city, and that an agreement so providing would be void as against public policy and contrary to the public interest.

(b) That said agreement, insofar as it may pertain to areas not within the corporate limits and not now served with natural gas by the City of Huntsville, is indefinite, illusory, lacking in mutuality, and therefore void as an executory contract.

(c) That Redstone Arsenal is not a part of Madison County within the meaning of said agreement.

(d) That said agreement insofar as it may pertain to areas outside the built-up areas or suburbs immediately adjacent or contiguous to the City of Huntsville is ultra vires of the City of Huntsville and therefore void.

(e) That said agreement insofar as it may pertain to such subject matter, is void as an unreasonable restraint of trade.

(f) That said agreement does not apply to the United States Government so as to give the respondent any exclusive right to sell natural gas to it under any circumstances or at any place.

(g) That complainant has a right to enter into an agreement to furnish and sell nautral gas to the United States Government at any point in the police jurisdiction of the Town of Madison, and may rightfully agree that title to the gas is to pass at a meter situated at such point, without regard to where the United States Government thereafter pipes or otherwise transports it, and without regard to the manner or place where it is thereafter used or consumed; and complainant will incur no liability to respondent if it so furnishes and sells gas.

(h) That the alleged right of respondent, if any, to serve exclusively the United States Government with natural gas for use in Redstone Arsenal, has ceased by reason of the respondent's failure to enter into a contract with the United States Government for the furnishing of natural gas to Redstone Arsenal within 120 days after its request for service.

(i) That the City of Huntsville has no power to expend any of its funds to finance the construction of a gas distribution system to serve areas beyond its corporate limits and the built-up areas or suburban fringe adjoining such limits.

The bill concluded with a prayer for general relief and an offer to do equity.

After demurrer to the bill was overruled and answer filed, the parties entered into a stipulation of certain facts. In addition to all the necessary jurisdictional and formal allegations of the bill and answer, it was stipulated that the United States Government has requested both Alabama-Tennessee and the city to quote rates, statements of availability and conditions of supply in connection with furnishing natural gas to the United States Government for use in Redstone Arsenal as shown by the respective exhibits to the bill of complaint and answer. The stipulation stated that the population of the Town of Madison as shown by the latest Federal Census is 1,435 and the population of the City of Huntsville is more than 73,000. It also stipulated that in 1950, the corporate limits of the City of Huntsville were approximately two miles from Redstone Arsenal at the nearest point and approximately five miles of the boundary of the Redstone Arsenal were within three miles of the corporate limits of the city and within its police jurisdiction.

Trial was had on September 20, 1961.

Appellant offered in evidence certain specifications and maps and the stipulation already referred to and rested. Appellee called several witnesses and there was no rebuttal. The court rendered its decree on March 21, 1962, and held that the agreement between the parties is not void as against public policy or contrary to the public interest; that it is a valid executory contract and is not indefinite, illusory or lacking in mutuality in any respect; that Redstone Arsenal is a part of Madison County within the meaning thereof; that said agreement is in no respect ultra vires; that it is not void as an unreasonable restraint of trade; that the city has the exclusive right to sell natural gas to the United States Government for use in Redstone Arsenal, provided it enters into a contract with the government within a period of 120 days after its application for service; that Alabama-Tennessee has no right to enter into an agreement to furnish and sell natural gas to the United States Government at any point in the police jurisdiction of the Town of Madison and cannot pass title to gas to the government at a meter situated at such point for distribution by the United States Government to the area embraced within Redstone Arsenal; that the city's exclusive right to serve the government with natural gas for use in Redstone Arsenal has not ceased by reason of any failure by the city to enter into a contract within 120 days after a request for service; and that Alabama-Tennessee is not a proper party to question the city's power to expend its funds to finance construction of additions to its gas distribution system.

Assignment of error 54 reads:

"For that the court below erred in failing to hold that said public policy makes illegal and unenforceable any agreement between sellers of utility services that one shall have any exclusive right to furnish such services for use on a federal military reservation."

It should be borne in mind that neither the United States Government nor any of its agencies are parties to this suit. The Federal Government may contract for service for natural gas with any party it should choose. The trial court could not and did not attempt to say what individuals, corporations or departments of government, not parties to this suit, could or could not do. The question before that court was a declaration of rights as between the contracting parties, the appellant and the appellee. Based upon that fact, we see no reason to consider or discuss cases dealing with questions where the government had elected to deal with certain utilities and State Public Service Commissions were trying to prohibit those utilities from furnishing service to the government. See Arkansas Power & Light Co. v. Arkansas P. S. C., 231 Ark. 142, 330 S.W.2d 51, cert. den. 362 U.S. 975, 80 S.Ct. 1060, 4 L.Ed. 2d 1011; Re Souris River Telephone Mutual Aid Corp., 24 P.U.R. 3d 84, (N.D.P.S.C., 1958).

Assignment of error 26 reads:

"For that the court below erred in finding that the 'Service Agreement' contained mutuality of obligation as to areas outside the City of Huntsville."

Appellant agrees that there is no lack of mutuality and that each party is under a legal duty to the other in that part of the contract in which it agrees to sell, and appellee agrees to buy, natural gas to supply the area within the corporate limits of Huntsville. But appellant argues that there is no mutuality as to the area outside of the city limits because any amount of gas appellee might buy for resale outside the city limits would be dependent upon its wish, will or desire, because it did not promise to buy any such gas. This argument is supported by McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 51 So. 767, which states that "a contract for the future delivery of personal property may be void because there is no consideration or mutuality, if the contract or any

material part of it is wholly conditioned by the will, wish, or want of only one of the parties."

We cannot agree that the quoted principle applies to this contract. Article I of the contract provides:

"Seller agrees to sell and deliver to Buyer and Buyer agrees to purchase, receive and pay for, under the terms and subject to the conditions hereinafter set forth, all of the natural gas required by the Buyer to supply all of its consumers in the area of service herein defined, as now or hereafter connected to and served with gas from the facilities of Buyer."

We think this is sufficient consideration for the contract; but there is still another consideration. In agreeing to the service area, appellant agreed to forbear serving potential consumers within appellee's sales area until the lapse of 120 days after such consumer's application for service. As early as Robinson's Adm'rs v. Tipton's Adm'r, 31 Ala. 595, we said that the "suspension or forbearance of a man's legal or equitable rights forms a foundation for an undertaking." In McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 51 So. 767, this court quoted with approval the following from Storm v. United States, 94 U.S. 76, 24 L.Ed. 42:

" * * * 'Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have in fact been performed in good faith, and without prejudice to the defendant. Morton v. Burn, 7 Ad. & El. 19, 34 E.C.L. 18. Agreements are frequently made which are not, in a certain sense, binding on both sides at the time when executed, and in which the whole duty to be performed rests principally with one of the contracting parties. * * * Cases often arise where the agreement consists of mutual promises, the one promise being the consideration for the other; and it has never been seriously questioned that such an agreement is valid, and that the parties are bound to fulfill their respective obligations.' "

Assignment of error 28 reads:

"For that the court below erred in finding that the 'Service Ageement' was sufficiently definite to constitute a contract, as to areas outside the City of Huntsville."

It is sufficient to say that we agree with the finding of the trial court that the provisions of the "Service Agreement" were sufficiently definite as to areas outside the City of Huntsville.

■ Assignment of error 2 reads:

"For that the court below erred in holding that Redstone Arsenal is a part of Madison County, Alabama within the meaning of the 'Service Agreement' between the parties dated December 1, 1956."

Appellant argues strenuously that Redstone Arsenal is not a part of Madison County so far as matters pertaining to utility services are concerned.

Article I, Sec. 8, of the Constitution of the United States provides that Congress shall have power to exercise exclusive jurisdiction over all places purchased by the consent of the legislature of the state for the erection of forts, arsenals, etc. Redstone Arsenal was ceded to the Federal Government by the State of Alabama under Tit. 59, §§ 18 and 19, Code 1940. The exhibits showing such cession described the property as being in "Madison County, State of Alabama."

Our cases uniformly hold that Alabama laws do not prevail in federal enclaves such as Redstone Arsenal and military reservations except in certain particulars reserved

in Tit. 59, § 19, which are not here pertinent.

But the mere fact that the Redstone Arsenal is under federal jurisdiction does not mean that it is not in Madison County, Alabama.

Appellant relies on a statement in O'Pry Heating & Plumbing Co. v. State, 241 Ala. 507, 3 So.2d 316, where we held that a contractor performing work on a federal reservation could not be required to purchase an Alabama contractor's license. The court said:

"So that the issue reverts in final analysis to whether this contractor wholly performed his contract on territory under the exclusive jurisdiction of another sovereign than Alabama. If so, it was not done in Alabama, and the license is not applicable."

This language, when construed with the entire opinion, does not mean that the contract was not performed in Alabama geographically, but only that it was not subject to the Alabama law requiring contractors to have a license, because the federal government had exclusive jurisdiction over the reservation.

This point was decided by the Federal Supreme Court in Howard v. Com'rs of Sinking Fund of City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617, where it was said:

"* * * When the United States, with the consent of Kentucky, acquired the property upon which the Ordinance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the structural divisions of the Commonwealth, in accordance with state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States. Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. A change of municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction, not fiction, to which we must give heed."

In a later case decided by the Appellate Court of Indiana, after citing the Howard case, it was said in Board of Com'rs, etc. v. Board of School Com'rs, 130 Ind.App. 506, 166 N.E.2d 880:

"* * * There is little need to discuss these cases, for they involve problems of jurisdiction on federal lands within various states and deal mostly with disputes as to which sovereign has jurisdiction of those lands. In the case at bar there is no dispute over matters of jurisdiction pertaining to the land ceded to the federal government. The legal concept of jurisdiction and the geographical structure of a state are not one and the same. * * *"

The territory comprising Redstone Arsenal was described as being in Madison County when ceded to the Federal Government by the State of Alabama. That cession did not change either state or county boundaries. The territory over which the Federal Government acquired jurisdiction still remained in Madison County.

The contract between the parties here gave appellee the exclusive right to sell gas in Madison County, except to other mu-

nicipalities. That, too, was a geographical designation and we hold that the trial court did not err in finding that "Redstone Arsenal is a part of Madison County within the meaning of said agreement."

Assignment of error 55 charges that the court erred in failing to hold that the service agreement was ultra vires of the City of Huntsville.

Appellant argues that appellee has no more rights than are given by Tit. 37, § 360, Code 1940, which permits cities and towns to contract to furnish gas or electricity "to the city or town and surrounding territory;" and appellant contends that "Madison County" includes more than "surrounding territory."

Once again, we note that the controversy here is not the servicing of "Madison County" but the servicing with gas of Redstone Arsenal by appellee.

■ The declaratory judgment statutes do not empower courts to decide moot questions, abstract propositions or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases. Birmingham Trust National Bank v. Garth, 263 Ala. 121, 81 So.2d 590; Homan v. Beard, 268 Ala. 22, 104 So.2d 914. A decision as to Madison County could be advisory, but we can decide the point relating to Redstone Arsenal under Tit. 37, § 360.

The undisputed evidence is that prior to the time this suit was filed, appellant knew that appellee was serving two housing projects on Redstone Arsenal reservation with gas; that the east boundary of the reservation abuts the west boundary of the corporate limits of appellee for about seven miles, and the north boundary of the reservation abuts the south boundary of appellee for about one mile; that practically all of the buildings to be furnished with gas are in close proximity to the corporate limits of appellee. Title 37, § 9, allows cities the size of Huntsville to have police jurisdiction

for a distance of three miles outside the city limits. Of course, the cession of the reservation to the United States does not permit the city's police jurisdiction to apply, but it is still undisputed that most of the buildings to be served would be within the police jurisdiction if such did apply.

■ In view of these facts, we hold that Redstone Arsenal is in the surrounding territory of appellee as contemplated by the statute, Tit. 37, § 360, and the service agreement is not ultra vires of the City of Huntsville.

Assignment of error 50 reads:

"For that the court below erred in failing to hold that the general words of the 'Service Agreement' do not apply to sovereign government."

What we said in reference to No. 54 applies here. The United States is not a party and its sovereignty is not an issue in the instant case.

Assignment 40 charges error in that finding of the court which reads:

"That complainant has no right to enter into an agreement to furnish and sell natural gas to the United States Government at any point in the police jurisdiction of the Town of Madison and cannot pass title to gas to the Government at a meter situated at such point for distribution by the United States Government to the areas embraced within Redstone Arsenal."

The Town of Madison is adjacent to Redstone Arsenal, had a population of 1435 according to the 1960 census and appellant has a pipeline running through the municipality, although the town of Madison and its surrounding territory is served by Muscle Shoals Natural Gas Corporation, which buys its gas from appellant. As we understand the argument, appellant contends that it has a right to sell gas to Redstone Arsenal if it places the meter in the Town of Madison which is clearly exempted

from the sales area of the contract. We cannot agree.

■ We have already shown that Redstone Arsenal is within appellee's sales territory, both by contract and by statute. Appellant should not be allowed to do indirectly (install a meter for sales in the Town of Madison) what it has directly contracted with appellee not to do. It knew that appellee was selling gas in Redstone Arsenal, and, under the contract, appellee will still have to buy from appellant all the gas sold to Redstone Arsenal if the government sees fit to purchase it from appellee.

The holding of the trial court does not modify or change our rule that title to gas passes at the meter. Alabama Gas Co. v. City of Montgomery, 249 Ala. 257, 30 So.2d 651. Both sides agree that this is the law and we are certain that the lower court also recognized it, but was merely holding that appellant could not use that principle to support a right which it had contracted away to appellee.

■ Assignment of error 19 reads:

"For that the court below erred in holding that said agreement is not void as an unreasonable restraint of trade."

Appellant argues that the contract is void under Tit. 9, § 22, Code 1940.

In Buckalew v. Niehuss, 249 Ala. 585, 32 So.2d 299, we said:

"It is true that contracts in general restraint of trade violate the policy of the law and are therefore void, but as observed in Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889:

" ' * * * Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract. * * *

" 'Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time, and persons, where they are supported by sufficient consideration. * * * ' "

See also Denton v. Alabama Cotton Co-op. Ass'n, 30 Ala.App. 429, 7 So.2d 504.

We are unable to say that the contract before us injuriously affects the public weal.

■ It is worthy of note that the contract which appellant now seeks to declare partly void was prepared by appellant and on forms of appellant. It is a rule of long standing that the courts will construe doubtful terms in a contract more strongly against the party who framed or prepared them, and when the instrument is capable of two constructions, it should receive that which is most unfavorable to the maker. King v. Capitol Amusement Co., 222 Ala. 115, 130 So. 799; Minge v. Green, 176 Ala. 343, 58 So. 381; Livingston v. Arrington, 28 Ala. 424.

■ Assignments of error 4 and 22 raise the same point, and we copy No. 4:

"The court below erred in holding that the United States Government has not made application to the appellee for service at the present time but has only requested the quotation of rates, statement of availability, and conditions of supply in connection with the furnishing of gas for use at Redstone Arsenal."

Appellant contends that Redstone Arsenal did make an application for service and since more than 120 days elapsed without appellee agreeing to serve the Arsenal, the city's exclusive right to serve that customer ceased.

The request for quotation, dated 23 December 1958, sent out by Redstone Arsenal,

**194**

which appellant argues was a request for service, contained this statement:

" * * * This request does not commit the Government to pay any costs incurred in the submission of this quotation or in making necessary studies or designs for the preparation thereof nor to procure or contract for services or supplies. * * *"

Also the contracting officer wrote the city on 10 June 1960, more than three months prior to the filing of this suit:

"This is to advise that our request for quotation of 23 December 1958, as revised on 3 March, 1959, was not intended to be and did not constitute an application for natural gas service by Redstone Arsenal. * * *"

No more discussion is required to show that the trial court did not err in holding that the appellee had not failed to furnish gas within 120 days after a request for such service.

Where the evidence is taken ore tenus before the trial court, we will not set aside that court's findings unless plainly and palpably wrong. Hodges v. Beardsley, 269 Ala. 280, 112 So.2d 482; Talbot v. Braswell, 266 Ala. 578, 98 So.2d 7. We cannot say that the court's findings are plainly wrong.

The Alabama Public Service Commission has filed an amicus curiae brief calling our attention to the fact that the Commission has granted a certificate of convenience and necessity to Muscle Shoals Natural Gas Corporation to distribute gas in part of the area claimed by appellee under its contract with appellant. Be that as it may, the Muscle Shoals Natural Gas Corporation was not a party to this suit, none of its rights are attempted to be determined by this suit, and if any of its rights are jeopardized, it is entitled to its day in court, when and if it is damaged and it seeks a remedy. This court will not

decide a question presented by amicus curiae which was not presented by the parties to the cause, and will leave the question for decision when properly raised and presented. Corning v. Patton, 236 Ala. 354, 182 So. 39; Hall v. Esslinger, 235 Ala. 451, 179 So. 639.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL and HARWOOD, JJ., concur.