912 So.2d 508 (2005)
M. Palmer BEDSOLE, Jr.
v.
J. Russell GOODLOE, Jr., et al.
1021356.
Supreme Court of Alabama.
May 6, 2005.
*510 Wesley Pipes, Mobile; and Ronnie E. Keahey, Grove Hill, for appellant.
Andrew P. Campbell and Caroline Smith Gidiere of Campbell Waller & Poer, LLC, Birmingham; and Joseph C. McCorquodale III of McCorquodale & McCorquodale, Jackson, for appellees.
HARWOOD, Justice.[1]
M. Palmer Bedsole, Jr. ("Bedsole"), appeals from an order of the Clarke Circuit Court enjoining him from pursuing an action filed in the Mobile Circuit Court. We reverse and remand.

Facts and Procedural History
Bedsole Land Company, Inc. ("Bedsole Land"), owns and manages several thousand acres of timberland in Alabama. Bedsole Land is organized under the laws of Alabama. Its articles of incorporation are filed in Clarke County but, Bedsole asserts, its principal place of business is located in Mobile County. From 1976 until September 2002, Bedsole served as the president of Bedsole Land. He owns approximately 41 percent of the outstanding stock of Bedsole Land.
On July 26, 2002, several other shareholders, whose combined ownership interests amounted to approximately 55 percent of the outstanding stock of Bedsole Land, sued Bedsole and Bedsole Land in the Clarke Circuit Court. The shareholders  J. Russell Goodloe, Jr., James G. Bedsole III, James L. Goodloe, Mary Ann Bedsole, and T. Massey Bedsole (hereinafter referred to collectively as "the plaintiffs")  alleged that Bedsole, as "chief operating officer and president" of Bedsole Land and owner of 41 percent of the company stock, was oppressing and "squeezing out" the plaintiffs by manipulating corporate earnings and depreciating Bedsole Land's corporate stock and that Bedsole had breached his fiduciary duty to the plaintiffs. Asserting that the directors were deadlocked in the management of the company's affairs and that the shareholders had been unable to break the deadlock, the plaintiffs also sought to have the court order a judicial dissolution of Bedsole Land pursuant to § 10-2B-14.30(2)(i) and (ii), Ala.Code 1975. In August, the complaint was amended to add Travis B. Goodloe and Mary Ellis Gazaway as plaintiffs, *511 raising the percentage of aggregate stock ownership represented by the plaintiffs to approximately 59 percent.
On September 12, 2002, Bedsole filed an answer to the complaint,[2] denying all material allegations, asserting various affirmative defenses, and contending that the plaintiffs could not prevail on any of the claims asserted in the complaint because they had at all times held three of the five positions on the board of directors and had voted in favor of the very actions about which they were now complaining.
On September 16, 2002, the shareholders met and adopted numerous amendments to Bedsole Land's bylaws. Among those amendments was a new "Article VII" granting the board of directors ("the board") power to propose, and the shareholders the power to approve by majority vote, a dissolution of Bedsole Land. Bedsole argued at the meeting that this action was improper, contending that the articles of incorporation ("the articles") controlled over the bylaws and that "any attempt to reduce the voting requirements for dissolution would be contrary to the legal rights of the minority shareholders." Nevertheless, all shareholders except Bedsole approved the amendment. At that meeting, T. Massey Bedsole resigned as a director and his son, Travis M. Bedsole, Jr., was elected to replace him on the board. The five-member board thereby remained split 3-2 in favor of the plaintiffs, with Bedsole and his daughter holding the other two directorships. On that same date, the board met and voted to replace Bedsole as both chairman of the board and president of Bedsole Land. J. Russell Goodloe assumed the chairmanship of the board and his son, John R. Goodloe III, assumed the presidency of Bedsole Land ("President Goodloe").
On February 26, 2003, the plaintiffs filed a second amended complaint. Adding a "Count VI" and "repeat[ing] and realleg[ing] each and every allegation in the preceding paragraphs [from the earlier complaint] as if set forth fully [t]herein," the plaintiffs stated that the shareholders had elected new officers and directors, including President Goodloe. The remainder of their averments are of such importance to our ensuing analysis that we set them out at length:
"Since [the election of new officers and directors], the president has acted and managed the affairs of the company at the direction of the Board of Directors and in accordance with the Bylaws of [Bedsole Land] and Alabama law. Specifically, the Board and the president have handled all affairs of [Bedsole Land] in a prudent and reasonable manner adhering to their fiduciary duty owed to both the shareholders and the corporation itself.
"Included with these management duties is the contract of the Board to sell the property of [Bedsole Land] located in the State of Tennessee. This acreage has been contracted for sale pursuant to an appraisal done by Resource Management Services, Inc., a leading appraisal firm in the State of Alabama. In accordance with the appraisal, the Board and John R. Goodloe, III have contracted for the sale of said property for the appraised value.
"In addition, the Board of Directors and John R. Goodloe, III have managed [Bedsole Land] correctly in accordance with the Bylaws passed by the Board *512 and shareholders from previous meetings.
"Defendant Bedsole has accused present management of mismanagement of [Bedsole Land] and its assets and has suggested that management by John R. Goodloe, III and the Plaintiffs as majority shareholders has not been proper. As a result, under the Alabama Declaratory Judgment Act, a justiciable case [or] controversy has been created over whether the management by the Plaintiffs as majority shareholders and Goodloe has been in accordance with Alabama law and the Articles and Bylaws of [Bedsole Land].
"Plaintiffs submit that Defendant Bedsole's accusations are nothing but a last ditch effort to interfere with the ongoing management of [Bedsole Land] by the majority of the shareholders. However, the Plaintiffs are entitled after trial under the Alabama Act to a declaratory judgment that the Plaintiffs, as the majority shareholders, and John R. Goodloe, III, as the president of [Bedsole Land], have managed [Bedsole Land] in accordance with Alabama law and the Articles of Incorporation and ByLaws.
"WHEREFORE, premises considered, Plaintiffs pray that this Court, after a trial, shall enter an Order (1) declaring that Plaintiffs and John R. Goodloe, III have managed [Bedsole Land] properly, prudently, and in accordance with both Alabama law and the Articles of Incorporation and Bylaws of [Bedsole Land]; (2) that all acts taken in management of the business by Plaintiffs and President Goodloe have been in the best interest of [Bedsole Land] and its shareholders; and (3) for such other further additional relief to which the Plaintiffs may be entitled, premises considered."
Bedsole filed a motion to dismiss the second amended complaint, contending, among other things, that it did not present a justiciable controversy and therefore sought an advisory opinion.
On March 10, 2003, the shareholders held a meeting at which they approved several actions that would dramatically affect Bedsole Land. Among other things, the shareholders moved to approve the board's recommendation to amend the articles to allow the board to propose the dissolution of Bedsole Land, which proposal the shareholders could then approve by a "majority of shares entitled to vote." Bedsole objected to the proposal that dissolution be effective on a majority vote, stating that "[t]he state law is that two-thirds of the vote are required. I think that I am personally damaged, really, to have the articles amended." Bedsole's attorney, who was in attendance, expressed the opinion that "the statutory standard for dissolution is two-thirds shareholder vote" and that any attempt to reduce the voting requirements for dissolution "would be contrary to the legal rights of minority stockholders" and "in the circumstances of this corporation would be unlawful." Counsel for the plaintiffs countered that any requirement for two-thirds vote was subject to the right of the shareholders to amend the articles to allow otherwise, and that "no vote is being taken on this issue today, whether to dissolve or not to dissolve." During those discussions, Bedsole remarked that "I don't think the assets are being managed as they should be managed." The motion passed, with only Bedsole voting in opposition. Next, a motion was made "to ratify the sale of the Tennessee property" for a specified amount. Bedsole stated, "I vote against this because I think it is not the best thing for the company. I think that it's been poorly handled." He further expressed the opinion *513 that the directors favoring the proposal to sell the Tennessee property "did not analytically come up with this decision" and that the underlying reason for the proposal, which had not been expressed, "is penalizing me and my family, and I object to it for that reason." That motion passed with only Bedsole voting against it. A motion was made to satisfy all of the debt of Bedsole Land out of the proceeds of the eventual sale, after which the balance of the proceeds would then be distributed to the shareholders based on their ownership interest in Bedsole Land. Bedsole simply stated, "I think after I had opposed the sale that I shouldn't participate in the vote" and abstained. The motion otherwise passed unanimously. Other matters, not pertinent to disposition of the issues raised in this appeal, were raised, discussed, and voted upon.
On April 17, 2003, Bedsole wrote a letter to President Goodloe stating that Bedsole desired to transfer 11 of his shares to a limited-liability company wholly owned by a trust benefiting his daughter. Bedsole acknowledged that under a longstanding "Stock Restriction Agreement" he could not actually sell his shares without first offering those shares to Bedsole Land and then to a charitable trust. However, as his letter explained:
"The consistent practice of [Bedsole Land] has been to allow such intra-family transfers and to waive the `first offer' requirements of [Bedsole Land's] Stock Restriction Agreement. I know specifically that transfers were allowed [in specified past instances]. No intra-family transfers have been refused."
President Goodloe's letter of April 22 replying to Bedsole's letter did not acknowledge the possibility of waiver of the first-offer requirement of the stock restriction agreement; instead the letter advised that, given Bedsole's proposed transfer of shares in Bedsole Land to his daughter,
"[i]n accordance with its rights under paragraph 3 of the Stock Restriction Agreement, [Bedsole Land] does hereby exercise its right to purchase those shares for the sum of [a specified amount] per share, for a total of [a specified amount]. [Bedsole Land] accepts your offer and hereby exercises its right to buy those shares at that price."
(Emphasis added.) President Goodloe proceeded to notify the board of a meeting scheduled for 10 days after the notification letter to Bedsole to ratify the purchase of Bedsole's shares.
One week after President Goodloe's letter, on April 29, 2003, Bedsole sued the plaintiffs from the Clarke County action and also Travis M. Bedsole, Jr., John R. Goodloe III, and Bedsole Land in the Mobile Circuit Court ("the Mobile action"), asserting that the other shareholders owned approximately 59 percent of the outstanding stock of Bedsole Land, whereas he owned only approximately 41 percent. Bedsole stated by way of background that the majority shareholders, through their voting control over the board, had removed him as president on September 16, 2002, replacing him with President Goodloe and that also on September 16 Travis M. Bedsole, Jr., had been elected a director to replace T. Massey Bedsole and that Travis Bedsole was "aligned with and under the control of the majority shareholders." Turning then to the March 10, 2003, shareholders' meeting, Bedsole explained that a majority of the shares had been voted to ratify the sale of the Tennessee land and to distribute the net proceeds as a dividend, and that a majority of the outstanding shares had been voted to amend the articles to allow dissolution by majority vote of the shareholders "instead of by a two-thirds vote of *514 the outstanding shares which is required by § 10-2B-14.02(e), Ala.Code [1975]," given that the articles were silent on the voting requirements for dissolution. Bedsole averred that this vote was over his "strong objection that the amendment was unlawful and was contrary to the rights of minority shareholders." He asserted that the amendment thus adopted "was improperly and unlawfully adopted" because of the requirements of §§ 10-2B-7.27(b) and -14.02, Ala.Code 1975, which require a two-thirds majority vote rather than a simple majority vote to adopt such an amendment.[3] Last, Bedsole recounted his April 17 letter to President Goodloe, President Goodloe's April 22 response, and the scheduled meeting of the board "to make [Bedsole] sell the designated shares to [Bedsole Land] against his will."
By way of relief in the Mobile action, Bedsole sought a temporary restraining order to prevent a directors' meeting from being conducted to require him to sell his stock to Bedsole Land. He sought a preliminary and permanent injunction to that same end and also to prevent the defendants in the Mobile action from "recording any articles of amendment reflecting amendment to the shareholders' voting requirements for dissolution of [Bedsole Land]," from "making any distributions of income from the sale of [Bedsole Land's] Tennessee property until such time as the defendants properly act upon the requests contained in the plaintiff's letter of April 1[7], 2003," and from taking any steps to frustrate Bedsole's bona fide estate-planning efforts or that would be contrary to his rights "under the circumstances of this case" (Counts I and II). Bedsole sought to have the court order a shareholders' meeting, pursuant to § 10-2B-7.03, Ala.Code 1975, to consider the request contained in his letter of April 17 (Count III). He sought a judgment "declaring that the defendant shareholders' attempt to lower their voting requirements for dissolution of [Bedsole Land] is unlawful under § 10-2B-7.27(b) and § 10-2B-14.02(e), Ala.Code [1975]" (Count IV). Finally, he asserted:
"The actions of the defendant shareholders have been an effort to deny [Bedsole] his rights as a minority share-holder. *515 The wrongful actions include attempts to take away his voting rights regarding the dissolution of [Bedsole Land], to force him to agree to or participate in a dissolution of [Bedsole Land] against his will, to force him to sell shares of [Bedsole Land] instead of transferring them for the benefit of his daughter, to frustrate his bona fide estate planning efforts, and to ignore his rights as a shareholder and director to call special meetings of the shareholders and directors. The defendant shareholders are liable for the wrongful and willful oppression and squeeze out of the plaintiff's interests in [Bedsole Land] in accordance with principles of Alabama law."
(Count V.)
As noted, Bedsole's request for a temporary restraining order was limited to preventing Bedsole Land from holding a directors' meeting and from purchasing the 11 shares of stock in Bedsole Land he had wanted to transfer for his daughter's benefit. On that limited ground, the Mobile Circuit Court on April 29 granted Bedsole's motion for a temporary restraining order and set the hearing on his application for a preliminary injunction for May 2.
On April 30, the plaintiffs filed their own motion in the Clarke Circuit Court seeking to have the Mobile action temporarily restrained and preliminarily enjoined. The plaintiffs offered three reasons to support the issuance of an injunction: 1) the Mobile action allegedly violated Rule 13, Ala. R. Civ. P., because, the plaintiffs stated, Bedsole's claims in the Mobile action should have been asserted as compulsory counterclaims in the Clarke County action; 2) the Mobile action interfered with the Clarke Circuit Court's jurisdiction over the question of whether to dissolve Bedsole Land; and 3) the Mobile action interfered with the Clarke Circuit Court's jurisdiction "to enter equitable relief." Were the Mobile action not enjoined, the plaintiffs contended, it would "divest [the Clarke Circuit Court] of its jurisdiction over the claims in [the plaintiffs'] action."
On May 1, 2003, the Clarke Circuit Court conducted a hearing on the plaintiffs' motion. Counsel for the plaintiffs argued that there clearly was a "logical relation" between the claims of mismanagement referenced in the second amended complaint and those referenced in the Mobile action, and that, as to the issue raised in the Mobile action whether voluntary dissolution could properly be approved with less than a two-thirds vote, "[t]hat issue is squarely before Your Honor." Counsel for Bedsole countered that because "the things that [Bedsole] is complaining about all occurred in 2003 and at a March 10, 2003, specifically, board meeting," the Mobile action asserted after-acquired claims not compulsory counterclaims, and the court need not undertake a logical-relationship analysis. The Clarke Circuit Court issued a temporary restraining order that day (by handwritten order on the case action summary) prohibiting Bedsole from pursuing the Mobile action. On May 6, the Clarke Circuit Court entered two orders, the first one denying Bedsole's motion to dismiss the plaintiffs' second amended complaint. The second order enjoined Bedsole from pursuing the Mobile action, granted him 30 days in which to file a counterclaim in the Clarke Circuit Court asserting the claims previously made in the Mobile action, ordered the plaintiffs to post a bond in the amount of $10,000, and directed Bedsole Land, its shareholders, and its directors not to hold any shareholders' or directors' meeting concerning the sale of Bedsole's 11 shares of stock in Bedsole Land until such time as the Clarke Circuit Court could conduct a hearing on that matter.
*516 On May 16, 2003, Bedsole filed a petition for a writ of mandamus in this Court seeking an order directing the Clarke Circuit Court to grant his motion to dismiss the second amended complaint. That petition was denied without opinion.[4]Ex parte Bedsole (No. 1021320, July 9, 2003).
Also on May 16, Bedsole timely filed the instant appeal. He argues that the claims he asserted in the Mobile action would represent permissive, not compulsory, counterclaims in the Clarke County action because, he says, they were "after-acquired claims," as defined in Rule 13(e), Ala. R. Civ. P., to the first amended complaint, which he had answered, and the second amended complaint was a "spurious pleading" not requiring a responsive pleading. Additionally, Bedsole contends, the plaintiffs failed to make the necessary showings, and the trial court failed to make the necessary findings, in order for the plaintiffs to be entitled to an injunction.

Standard of Review
In reviewing the grant of a preliminary injunction, we must determine whether the trial court exceeded its discretion in issuing the injunction. Blount Recycling, L.L.C. v. City of Cullman, 884 So.2d 850, 853 (Ala.2003). A trial court exceeds its discretion when it "exceed[s] the bounds of reason, all the circumstances before [it] being considered." Valley Heating, Cooling & Elec. Co. v. Alabama Gas Corp., 286 Ala. 79, 82, 237 So.2d 470, 472 (1970). Examples of a trial court's exceeding its discretion are "where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of controlling law." Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17, 19 (Ala.1983). In reviewing the grant of a permanent injunction, we proceed de novo. T.F.T., Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241 (Ala.1999).

Analysis
In its May 6, 2003, order enjoining Bedsole from pursuing the Mobile action, the Clarke Circuit Court found that the Mobile action "allege[d] the same basic claims or the converse of the claims alleged in the Complaint" filed by the plaintiffs in the Clarke County action. Specifically, the trial court found:
"Both [actions] allege claims of shareholder oppression and squeeze out[;] ... both ask the Court to resolve certain controversies relating to management decisions since September 2002 by way of a declaratory judgment of the propriety (or impropriety) of those actions pursuant to Alabama law, the Articles of Incorporation, and/or By-Laws of [Bedsole Land].
"Additionally, the Mobile Action specifically alleges further mismanagement of [President Goodloe] and the current [board] in failing to permit [Bedsole] to convey his stock to his daughter ..., in contravention of the Stock Restriction Agreement relating to the sale or transfer of shares in [Bedsole Land], and in seeking to assert its rights to redeem the stock pursuant to the terms of the Stock Restriction Agreement."
Finding that all allegations made respectively by the plaintiffs and by Bedsole "arise out of the same aggregate core of operative facts: (1) the management of [Bedsole Land] before September 2002, *517 and (2) the management of [Bedsole Land] after September 2002," the Clarke Circuit Court concluded that "the claims alleged in the Mobile Action are logically related to those alleged in the [plaintiffs'] complaint and, thus, are compulsory counterclaims."
Bedsole argues that the claims asserted in the Mobile action consist entirely of "after-acquired claims." He reasons that when he filed his answer to the plaintiffs' complaint, none of the circumstances on which he relied in filing the Mobile action had yet arisen, much less had claims based on those circumstances accrued. In fact, Bedsole continues, the conduct complained of in the Mobile action did not occur until well after the plaintiffs' second amended complaint had been filed. Bedsole contends that the second amended complaint should be disregarded, for purposes of compulsory-counterclaim analysis, because, he says, it failed to state a justiciable claim and merely sought an advisory opinion as to an anticipated controversy.
We have closely read the allegations made and the claims asserted by Bedsole in the Mobile action, and we conclude that all of them relate to matters occurring, and causes of action accruing, after the filing of Bedsole's answer in the Clarke County action. Because the claims asserted by Bedsole in the Mobile action matured after he had served his answer to the complaint as first amended in the Clarke Circuit Court, Bedsole argues that those claims represent after-acquired claims under Rule 13(e), Ala. R. Civ. P., and, thus, while they could have been filed in the Clarke County action as permissive counterclaims, he was not obliged to assert them in that action as compulsory counterclaims.
Rule 13, Ala. R. Civ. P., provides, in pertinent part:
"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....
"....
"(e) Counterclaim Maturing or Acquired After Pleading. A claim which... was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."
In Liberty Mutual Insurance Co. v. Wheelwright Trucking Co., 851 So.2d 466, 484 (Ala.2002), we explained:
"`[T]he party need not assert a counterclaim that has not matured at the time he serves his pleading. This is derived from the language in the rule limiting its application to claims the pleader has "at the time of serving the pleading." A counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim.'"
(Quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1411 (2d ed.1990).)
"A counterclaim which does not exist at the time of the service of an answer cannot be compulsory since the existence of a counterclaim is determined at the time of service of the answer."
Champ Lyons, Jr., & Ally W. Howell, Alabama Rules of Civil Procedure Annotated § 13.1 (4th ed.2004).
"For a claim to qualify as a compulsory counterclaim under FRCP § 13(a),[[5]] *518 it must be a claim which the pleader has against an opposing party `at the time of serving the pleading.' Accordingly, only mature claims are subject to the compulsory counterclaim rule. Even if it arose out of the same transaction or occurrence as the opposing party's claim, a claim for relief that has not matured need not be asserted as a compulsory counterclaim.
"To be deemed compulsory, the counterclaim must be in actual existence, as distinguished from inchoate or potential existence, at the time the defendant answers the complaint. A counterclaim that is acquired by the defendant after he or she has answered the complaint will not be considered compulsory, even if it arises out of the same transaction as does the plaintiff's claim. Although the counterclaim is likely to arise or is contingent at the time the defendant serves an answer, it has not `matured' for purposes of FRCP 13(a)."
27 Fed. Proc., L.Ed. § 62.230 (1996)(footnotes omitted).
The plaintiffs' second amended complaint in the Clarke County action, filed on February 26, 2003, sought the trial court's "blessing" of two corporate actions: (1) contracting to sell Bedsole Land's Tennessee property and (2) the broad, generic action of managing Bedsole Land according to Alabama law, the articles, and the bylaws.
The Declaratory Judgment Act, §§ 6-6-220 through -232, Ala.Code 1975, "does not `"empower courts to ... give advisory opinions, however convenient it might be to have these questions decided for the government of future cases."'" Bruner v. Geneva County Forestry Dep't, 865 So.2d 1167, 1175 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994) (quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963))) (emphasis added in Stamps). This Court has emphasized that declaratory-judgment actions must "settle a `bona fide justiciable controversy.'" Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Gulf South Conference v. Boyd, 369 So.2d 553, 557 (Ala.1979)). The controversy must be "`definite and concrete,'" must be "`real and substantial,'" and must seek relief by asserting a claim opposed to the interest of another party "`upon a state of facts which must have accrued.'" Baldwin County, 854 So.2d at 45 (quoting Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)). "`Declaratory judgment proceedings will not lie for an "anticipated controversy."'" Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (quoting City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App. 1999)). Thus, if a declaratory judgment would not terminate any uncertainty or controversy, the court should not enter such a judgment. Bruner, 865 So.2d at 1175.
"`[J]usticiability is jurisdictional,' Ex parte State ex rel. James, 711 So.2d [952,] 960 n. 2 (Ala.1998); hence, if necessary, `this Court is duty bound to notice ex mero motu the absence of subject matter jurisdiction.'" Baldwin County, 854 So.2d at 45 (quoting Stamps, 642 So.2d at 945 n. 2). If we determine that a complaint fails to state a justiciable claim, we are obliged to conclude that the trial court lacked jurisdiction over that complaint; such a complaint therefore would not require the filing of a responsive pleading.
In the present case, the plaintiffs' second amended complaint sought a judgment *519 declaring that the plaintiffs had properly managed Bedsole Land in general and in selling its Tennessee property in particular. At the September 16, 2002, shareholders' meeting, there had been no mention of any possible sale of the Tennessee land; for all that appears, it was not then contemplated. Bedsole did at that meeting challenge the propriety of attempting to reduce the voting requirements for a voluntary dissolution of Bedsole Land by amending only the bylaws and as implicating the rights of minority shareholders. The second amended complaint, however, makes no mention of the amendment to the bylaws or of any other actions of the plaintiffs relating to changes in the voting requirements to effect a dissolution. (Of course, the March 10, 2003, shareholders' meeting had not yet taken place.) Rather, the only corporate act referenced in the second amended complaint was "the contract of the Board to sell the property of the company located in the State of Tennessee." The only controversy alleged as to it or any other management activity was that Bedsole had "accused present management of mismanagement of [Bedsole Land] and its assets and ha[d] suggested that management by John R. Goodloe, III and the Plaintiffs as majority shareholders ha[d] not been proper."
As was the case in Harper v. Brown, Stagner, Richardson, Inc., 873 So.2d 220, 224-25 (Ala.2003), "[t]he sole issue presented in this case is whether a justiciable controversy existed between [the plaintiffs] and [Bedsole] at the time [the plaintiffs] filed the declaratory-judgment action." In Harper, a justiciable controversy was shown because, before Harper had filed his declaratory-judgment action, Brown, Stagner, Richardson, Inc. ("BSR"), had taken such actions and made such statements through its attorney to Harper's attorney that "a lawsuit by BSR against Harper was inevitable.... BSR's suing Harper was inevitable." 873 So.2d at 225. "[O]ne of the purposes of the Declaratory Judgment Act is to enable parties between whom litigation is inevitable to have the issues speedily determined to prevent unnecessary injuries." Id. "Harper was not required to wait until BSR sued him to have his rights and obligations determined." Id.
By way of contrast, at the time the plaintiffs filed their second amended complaint, no litigation had been threatened by Bedsole and he had only raised a technical point about amending the bylaws rather than the articles and had expressed the opinion that any attempt to reduce the votes necessary for a voluntary dissolution would be contrary to the legal rights of the minority shareholders. In that regard, his position was much like that of the minority shareholders in Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 309 So.2d 424 (1975). In that case Alabama Dry Dock & Shipbuilding Company ("Dry Dock") had presented a proposed retirement plan to a special meeting of the stockholders for approval. In advance of the meeting, and at it, three stockholders registered objections to the plan, asserting that the directors did not legally have the power to approve certain features of the plan and that to adopt those features without the unanimous approval of the stockholders would constitute "a misappropriation of corporate funds" for which the directors would be personally liable. There were asserted to be "`numerous other objections ... which will be raised in contesting the legality of any payments made'" pursuant to the challenged feature of the plan. 293 Ala. at 650, 309 So.2d at 428. The plan was approved with only approximately 10% of the attending stockholders voting against it, but the directors passed a resolution that *520 the plan would not be put into operation until court approval of the plan could be obtained. Dry Dock then filed a declaratory-judgment action for that purpose, naming the three stockholders, both individually and as representatives of a class consisting of all stockholders, as defendants. They, in turn, moved to dismiss the complaint for failure to state a justiciable controversy, which motion the trial court denied. Cross-motions for summary judgment were filed, with the defendants filing affidavits disavowing any intention to file legal proceedings to have the plan declared illegal. After summary judgment was entered in favor of Dry Dock, the defendants appealed. This Court explained and held as follows:
"A justiciable controversy does not exist merely because a stockholder disagrees with management or votes his stock contrary to management's position. While there may be some equivocation in [one of the defendant's] statements, nevertheless, they, so far as pertinent here, refer to matters which may or may not occur in the future. The complaint itself alleges that the `Retirement Plan will or may be contested by Respondents or some of them.' Allegations which merely show that the plaintiff anticipates such a controversy may arise are not sufficient to invite judicial declaration of rights. Saenger Theatres Corp. v. McDermott et al., 237 Ala. 489, 187 So. 460 [(1939)]; Theater Company v. Manning et al., 236 Ala. 670, 185 So. 171 [(1938)]; Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450 [(1936)].
"It is also pertinent we think that the retirement plan is not in effect. The board of directors of plaintiff passed a resolution stating that the plan would not be put into operation until court approval was obtained. It has long been the law of this State that courts will not decide moot, abstract or hypothetical questions or render purely advisory opinions. Many cases to this effect are collected in the Alabama Digest under Declaratory Judgment, [Key no.] 65 and 66. To rule otherwise we think would cause a deluge of court litigation concerning the operation and future action of private corporations.
"The plaintiff has relied primarily on the following cases: Klein v. Jefferson County Building and Loan Ass'n, 239 Ala. 460, 195 So. 593 [(1940)]; Fore v. Alabama State Bridge Corporation, 242 Ala. 455, 6 So.2d 508 [(1942)]; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273 [(1936)]; Lang v. City of Mobile, 239 Ala. 331, 195 So. 248 [(1940)]; Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So.2d 619 [(1963)].
"While in some instances these cases are persuasive, we nevertheless are of the opinion that they fall short of sustaining its position. These cases involve the construction or constitutionality of statutes or involve matters of substantial public interest. They stand for the proposition that controversy touching the legality of acts of public officials or public agencies challenged by parties whose interests are adversely affected is one of the favored fields for declaratory judgment. While we regard the holdings of these cases as sound, we do not think they are applicable to private matters not involving public interest. Here, we are dealing with a proposed future act of a private corporation.
"Since the judgment of the trial court was void because of the lack of a justiciable controversy between the parties and since a void judgment will not support an appeal, it follows that the appeal is dismissed. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545 [(1965)]; *521 State ex rel. Baxley v. Johnson, 293 Ala. 69, 300 So.2d 106 [(1974)]."
Smith v. Alabama Dry Dock, 293 Ala. at 651-52, 309 So.2d at 429-30.
We conclude that the plaintiffs' second amended complaint fails to state a justiciable controversy and, therefore, failed to vest the Clarke Circuit Court with subject-matter jurisdiction over its contentions and claims. That being so, the complaint likewise did not warrant or require the filing by Bedsole of an answer or other oppositional "pleading," as that latter term is used in Rule 13(a), Ala. R. Civ. P.; Bedsole took the appropriate procedural step of moving for the dismissal of the second amended complaint on the basis that it failed to state a justiciable controversy. Therefore, the only viable complaint pending in the Clarke Circuit Court is the complaint as first amended, to which Bedsole filed an answer on September 12, 2002, four days before the September 16 meetings of the shareholders and the board. As noted, everything about which Bedsole complains in his Mobile action relates to events occurring and corporate actions taken at or after the March 10, 2003, shareholders' meeting. Thus, those claims, the validity of which we are not called upon to assess, are all after-acquired in the context of Rule 13(a) and (e) and are therefore exempt from being classified as compulsory counterclaims as to any of the claims asserted in the complaint as first amended.
Moreover, the jurisdiction of the Clarke Circuit Court over the plaintiffs' request for a judicial dissolution of Bedsole Land is in no way threatened by, and there is no potential for conflicting decisions resulting from, Bedsole's challenge in the Mobile action to the amendment to the articles authorizing a voluntary dissolution upon only a majority vote of the shareholders. The authority of the Clarke Circuit Court to order a judicial dissolution, if proven proper under § 10-2B-14.30(2)(i) or (ii), would be unaffected by any invalidation of the reduced voting requirement for voluntary dissolution that might be declared in the Mobile action, a prospect the legal propriety of which we are not called upon to consider.
We conclude that the last legally cognizable "claim" the plaintiffs filed in the Clarke Circuit Court was their first amended complaint, to which Bedsole filed an answer. Consequently, the Mobile action alleged claims "acquired ... after [the] serving" of the last pleading Bedsole was obliged to file in the Clarke County action. See Rule 13(e), Ala. R. Civ. P. The Mobile action, therefore, represented a permissive counterclaim as to the Clarke County action that could, at Bedsole's option, be filed either as a counterclaim in that action or as a separate claim in another venue. Consequently, the Clarke Circuit Court exceeded its discretion in concluding that the claims Bedsole asserted in the Mobile action were compulsory counterclaims that could be filed only in the Clarke County action. Its reliance, in part, on the allegations and claims in the first amended complaint for the purpose of comparing them with those in the Mobile action to see if they were "logically related" was misplaced. Under the logical-relationship test, "[a] counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." Committee Comments on the 1973 adoption of Rule 13, ¶ 6. See also Ex parte Cincinnati Ins. Cos., 806 So.2d 376, 379-80 (Ala.2001). Once Bedsole filed his answer to the complaint as first amended, however, any claims he might "after acquire" were immune from compulsory-counterclaim analysis vis-à-vis the first amended complaint, whether under the logical-relationship test or otherwise. Only claims asserted by him that *522 related back to the time he filed his answer would be subject to such an analysis. Bedsole's Mobile action does not challenge the Tennessee land sale; it asks only for a delay in the distribution of the resulting proceeds.[6] Contrary to the assertion of counsel for the plaintiffs at the May 1 hearing, the issue of the vote required for a voluntary dissolution of Bedsole Land was not "squarely before" the Clarke Circuit Court. That issue had not been raised in any pleading filed by the plaintiffs; rather, only the separate issue of judicial dissolution was raised by their complaint.
Although the parties dispute whether the injunction issued by the Clarke Circuit Court was a preliminary or permanent one, because we conclude that the trial court exceeded its discretion in ruling that the claims asserted in the Mobile action represented compulsory counterclaims, we need not discriminate between the resulting standards of review; likewise, we pretermit all discussion of the alleged technical deficiencies in the issuance of the injunction.

Conclusion
Because the plaintiffs' second amended complaint failed to state a justiciable claim, Bedsole was in no way obliged to reply to it by way of any "pleading." The last claims asserted by the plaintiffs to which Bedsole was required to file an answer were those asserted by the plaintiffs' first amended complaint. Bedsole filed an answer to that complaint, and all of the claims he asserted in the Mobile action were acquired after he served that pleading. Thus, the claims asserted in the Mobile action were after-acquired claims and, consequently, Bedsole was free to file them as original claims in any appropriate venue, including the Mobile Circuit Court. To the extent the order enjoining Bedsole from pursuing the Mobile action relied on the second amended complaint as a part of its analysis in determining whether the claims Bedsole was asserting in the Mobile action were compulsory counterclaims in the Clarke County action, it is a void judgment. See Smith v. Alabama Dry Dock & Shipbuilding Co., supra. To the extent the injunction order also mistakenly relied on the first amended complaint as part of that analysis, it is not void but erroneous. Accordingly, we reverse the injunction order and remand the case for the Clarke Circuit Court to vacate that order.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
I concur fully in the very thorough and well-reasoned main opinion. I write specially to address the plaintiffs' concerns expressed at oral argument over the prospect for an unseemly race to judgment if this Court were to permit the Mobile action to proceed.
As the main opinion recognizes, the Clarke County action, to the extent that it seeks an involuntary judicial dissolution, could proceed. Of course, if a judicial dissolution of Bedsole Land were obtained in the Clarke County action, the proceedings in the Mobile action would be substantially affected or perhaps mooted, but this scenario does not constitute a race to judgment on the same issues. On the other hand, should the plaintiffs in the Clarke County action attempt to assert through an amended complaint in that action matters that would constitute a compulsory counterclaim in the Mobile action, *523 Bedsole would be entitled to injunctive relief against further proceedings to avoid a race to judgment as to the issues first raised in the Mobile action. See Smith v. Charles E. Jay & Co., 292 Ala. 513, 296 So.2d 885 (1974). See also Ex parte Breman Lake View Resort, L.P., 729 So.2d 849, 851 (Ala.1999) ("This Court has held that the obligation imposed on a defendant under Rule 13(a), Ala. R. Civ. P., to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala.Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a `plaintiff' in that action (for purposes of § 6-5-440) as of the time of its commencement. See, e.g., Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala.1995); Penick v. Cado Systems of Cent. Alabama, Inc., 628 So.2d 598 (Ala. 1993); Ex parte Canal Ins. Co., 534 So.2d 582 (Ala.1988). Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause.").
NOTES
[1] This case was originally assigned to another Justice and was later reassigned to Justice Harwood.
[2] Bedsole Land has never been served with the summons and original complaint and has entered no appearance in the case; the "second amended complaint" discussed hereinafter was purportedly served on Bedsole Land by regular mail dispatched in care of John R. Goodloe III, then the company's new president.
[3] The possibly pertinent portion of these two Code sections read a follows:

"§ 10-2B-7.27. Greater quorum or voting requirements.
"(a) The articles of incorporation may provide for a greater quorum or voting requirement for shareholders (or voting groups of shareholders) than is provided for by this chapter.
"(b) An amendment to the articles of incorporation that adds, changes, or deletes a greater quorum or voting requirement must meet the same quorum requirement and be adopted by the same vote and voting groups required to take action under the quorum and voting requirements then in effect or proposed to be adopted, whichever is greater."
"§ 10-2B-14.02. Dissolution by board of directors and shareholders.
"(a) A corporation's board of directors may propose dissolution for submission of the shareholders.
"(b) For a proposal to dissolve to be adopted:
"....
"(2) The shareholders entitled to vote must approve the proposal to dissolve as provided in subsection (e).
"(c) Subject to the corporation's articles of incorporation, the board of directors may condition its submission of the proposal for dissolution on any basis, except that the board of directors may not decrease the vote required for approval under subsection (e).
"....
"(e) Unless the articles of incorporation require a greater or lesser vote ... the proposal to dissolve to be adopted must be approved ... by two thirds of all the votes entitled to be cast on the proposal ...; but in no case may the vote required for shareholder approval be set at less than a majority of all the votes entitled to be cast on the proposal...."
[4] We note that "without ordering an answer and briefs and without issuing an opinion, [the denial of a petition for the writ of mandamus] cannot have res judicata effect on subsequent proceedings in light of the extraordinary nature of the writ of mandamus." R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala.1994).
[5] The compulsory-counterclaim language quoted earlier from Rule 13(a), Ala. R. Civ. P., is identical to the language of Rule 13(a), Fed.R.Civ.P.
[6] In fact, at oral argument counsel for Bedsole advised that "the Tennessee sale was concluded and the proceeds were distributed, so the issue of holding up distributions until estate planning can take place is now moot."